43 Cal.Rptr.3d 682 (2006)
139 Cal.App.4th 1315
In re SUMMER H., a Person Coming Under the Juvenile Court Law.
Rhonda W., Petitioner
v.
The Superior Court of Los Angeles County, Respondent,
Los Angeles County Department of Children and Family Services, Real Party in Interest.
No. B189009.
Court of Appeal, Second District, Division Seven.
May 26, 2006.
*683 Children's Law Center and Martha A. Matthews, Los Angeles, for Petitioner.
No appearance for Respondent.
Raymond G. Fortner, Jr., County Counsel, Larry Cory, Assistant County Counsel and Judith A. Luby, Deputy County Counsel for Real Party in Interest.
PERLUSS, P.J.
No person who has a criminal record, other than for a minor traffic violation, may be licensed or certified as a foster parent for placement of a child without an exemption from the director of the State Department of Social Services. (Health & Saf.Code, § 1522.) Similarly, although the Legislature has expressed its clear preference for the placement of a dependent child in the home of a relative or extended family member rather than a traditional foster home, when the juvenile court removes a child from the physical custody of his or her parents, the child may not be placed in the home of a relative or other person who is not a licensed or certified foster parent and who has a criminal record unless a criminal records exemption has been granted by the appropriate official in the county in which the dependency proceeding has been initiated. (Welf. & Inst.Code, § 361.4.)[1]
As an alternative to removing the child from the physical custody of his or her parent and placing the child in the fostercare system, section 360 and California Rules of Court, rule 1456(b)[2] authorize the juvenile court at the disposition hearing to *684 appoint a legal guardian if the parent has advised the court he or she does not wish to receive family maintenance or family reunification services and agrees to the guardianship and the court finds, after consideration of all of the evidence, including a review of the proposed guardian's criminal history, that the guardianship is in the child's best interests.
Does the criminal records exemption requirement of section 361.4 circumscribe the court's discretion to appoint a legal guardian under section 360? The answer to this question, evident in the language of both sections 360 and 361.4, as well as the context of the statutory scheme of which they are part, is no. The two statutes are intended to address different situations. Section 361.4 is a placement statute. Its objective is to protect children who have been placed in the foster-care system by evaluating prospective caregivers who are not licensed or certified foster parents by the same criteria imposed on prospective foster parents. Section 360, in contrast, is a parent-driven statute. It is dependent not on the child's removal from the physical custody of his or her parents and the county's approval of the placement of the child, but on the parent's consent to the guardianship and the juvenile court's determination that the proposed guardianship is in the child's best interests.
In the instant case the juvenile court concluded it was prohibited by section 361.4 from granting the mother's request for appointment of a legal guardian for her daughter pursuant to section 360 because the proposed guardian (who had previously been appointed by the probate court as the legal guardian for another of her daughters) had a prior criminal record and no exemption had been granted by the county. The court's discretion to order a legal guardianship under section 360 is not so limited. Accordingly, we grant the mother's petition for writ of mandate and direct the juvenile court to hold a new hearing on the guardianship request.

FACTUAL AND PROCEDURAL BACKGROUND
Summer H. was born in June 2005 with cocaine in her system. Her mother Rhonda W. also tested positive for cocaine. Rhonda W. admitted to a social worker with the Los Angeles County Department of Children and Family Services (Department) that she is a long-term cocaine abuser; she had used cocaine while she was pregnant with Summer; she is unable to care for Summer; her "sister" Christie P.[3] is the legal guardian of her daughter S.H. (born in January 2004); and she and Christie P. had planned prior to Summer's birth for Christie P. to assume guardianship of Summer.[4] After receiving this information, the Department initiated an investigation of Christie P. and placed a "hospital hold" on Summer pending the results of that investigation.
On June 24, 2005 a Department social worker visited Christie P.'s home and confirmed that Christie P. was S. H.'s legal guardian pursuant to an order of the probate court (no dependency petition had ever been filed on S. H.'s behalf even though S.H. had apparently also been born with cocaine in her system); Christie P.'s home was clean and free of health hazards; S.H. appeared to be healthy and well cared for; and Christie P. was ready and willing *685 to assume guardianship over Summer. However, because a preliminary criminal background check revealed Christie P. had been convicted several times for theft and receipt of stolen property between 1993 and 1998, the Department refused to permit Christie P. to take Summer home from the hospital.
On June 29, 2005 the Department filed a section 300 petition alleging Rhonda W. had used cocaine while pregnant and therefore had failed to protect Summer (§ 300, subd. (b)); and her on-going cocaine addiction prevents her from being able to provide adequate care. (Ibid.) The petition also alleged that Rhonda W.'s substance abuse had led her to abuse or neglect nine of Summer's 10 siblings (all of whom, with the exception of S. H., either are currently or were at one time the subject of dependency proceedings) and that there is a substantial risk she will abuse or neglect Summer as well (§ 300, subd. (j)). Finding a prima facie case for detention had been established, the juvenile court ordered Summer detained upon her release from the hospital and set a pretrial resolution conference (PRC) for July 6, 2005.
Rhonda W. and Christie P. appeared at the PRC on July 6, 2005. The court continued the matter to July 22, 2005 and ordered the Department to address the issue of "termination of jurisdiction with a guardianship in place." On July 22, 2005 the court continued the PRC to July 29, 2005 to allow the Department to investigate the circumstances of Christie P.'s prior convictions and determine whether the county would grant Christie P. an exemption under section 361.4. The matter was continued several more times for this purpose and to allow the Department to prepare a preadjudication social study.
On August 16, 2005 the court set a contested adjudication hearing for September 12, 2005. The matter was again continued to October 17, 2005 for the Department to report on its investigation into Christie P.'s criminal history and the status of Christie P.'s request for a section 361.4 exemption. On October 17, 2005 the Department reported the details of Christie P.'s prior convictions[5] and advised the court that, on October 12, 2005, the county had denied a request for a criminal records exemption under section 361.4. The court continued the contested adjudication hearing to November 7, 2005.
On November 7, 2005 Rhonda W. filed a formal motion for legal guardianship, requesting that Christie P. be appointed Summer's legal guardian in lieu of declaring Summer a dependent child of the court. Rhonda W. argued in her motion that section 361.4's disqualification provisions do not limit the court's discretion to order guardianship under section 360. Summer's counsel filed a joinder in Rhonda W.'s motion.
The Department opposed the motion, arguing section 361.4 must be read together with section 360 to prohibit the court from ordering a section 360 guardianship when, as in this case, the proposed guardian has disqualifying convictions under section 361.4 and the county has denied an exemption.
On January 30, 2006 the juvenile court found Summer was a person described by section 300 and sustained the petition as to the failure-to-protect (§ 300, subd. (b)) and sibling-abuse allegations (§ 300, subd. (j)), and struck the remaining allegations as *686 redundant. The court denied Rhonda W.'s motion to appoint Christie P. as Summer's legal guardian, concluding the disqualification provisions of section 361.4 prohibited it from ordering a section 360 guardianship absent an exemption from the county. The court explained, "[I]f I could exercise discretion I may have come to a different result...."
On February 10, 2006 Rhonda W. filed the instant petition for writ of mandate, asserting section 361.4's prohibition on placement in a home where one of the residents has a disqualifying criminal conviction does not restrict the court's discretion to order a section 360 guardianship and requesting that we issue a peremptory writ of mandate directing the juvenile court to vacate its order denying Rhonda W.'s motion for legal guardianship and to hold a new hearing applying the standards of section 360, subdivision (a), to determine whether Christie P. should be appointed Summer's legal guardian. On February 16, 2006 this court issued an order to show cause as to why the requested relief should not be granted.

DISCUSSION

1. Standard of Review

The question whether section 361.4 limits the juvenile court's discretion to order a legal guardianship pursuant to section 360 is a legal question of first impression, subject to de novo review. (Bily v. Arthur Young & Co. (1992) 3 Cal.4th 370, 397, 11 Cal.Rptr.2d 51, 834 P.2d 745; In re Wanomi P. (1989) 216 Cal.App.3d 156, 165, 264 Cal.Rptr. 623.)

2. The Governing Statutes: Sections 360 and 361.4

"California has a comprehensive statutory scheme establishing procedures for the juvenile court to follow when and after a child is removed from the home for the child's welfare. [Citations.] `The objective of the dependency scheme is to protect abused or neglected children and those at substantial risk thereof and to provide permanent, stable homes if those children cannot be returned home within a prescribed period of time.' [Citation.]" (In re Celine R. (2003) 31 Cal.4th 45, 52, 1 Cal.Rptr.3d 432, 71 P.3d 787.) Under the current statutory scheme dependency proceedings in which a child is removed from his or her home typically involve four phases: jurisdiction, disposition, reunification and implementation of a permanent plan if reunification is unsuccessful. (See generally Cynthia D. v. Superior Court (1993) 5 Cal.4th 242, 247-250, 19 Cal. Rptr.2d 698, 851 P.2d 1307.)
After the juvenile court has assumed jurisdiction under section 355 by finding the child is a person described by section 300, the court is required to hear evidence on the question of the proper disposition to be made of the child. (§ 358, subd. (a).) At the disposition hearing the court may enter an order ranging from dismissal of the petition (§ 390; rule 1456(a)(1)) to declaring dependency, removing physical custody from the parents and making a general placement order for the child (§ 361; rule 1456(a)(7)).
Section 360 is a disposition statute and sets forth several of the options available to the court at the disposition hearing. Section 360, subdivision (a), provides, "After receiving and considering the evidence on the proper disposition of the case, the juvenile court may enter judgment as follows: [¶] (a) Notwithstanding any other provision of law, if the court finds that the child is a person described by Section 300 and the parent has advised the court that the parent is not interested in family maintenance or family reunification services, it may, in addition to or in lieu of adjudicating *687 the child a dependent of the court, order a legal guardianship, appoint a legal guardian and issue letters of guardianship, if the court determines the guardianship is in the best interest of the child, provided the parent and the child [if old enough to give meaningful response] agree to the guardianship. . . ." (See also rule 1456(a)(3), (a)(4), (b).)
The statute prohibits any guardianship from being ordered under its terms until an assessment of the proposed guardian, including "a screening for criminal records and prior referrals for child abuse or neglect...," is "read and considered by the court" and reflected in the minutes of the court. (§ 360, subd. (a), (a)(4); rule 1456(b)(1)(A).) The "purpose of this statutorily required preliminary assessment is to provide the juvenile court with the information necessary to determine whether the guardianship is in the child's best interests and whether the prospective guardian is an appropriate person to assume the duties of guardianship." (In re Dakota S. (2000) 85 Cal.App.4th 494, 501, 102 Cal. Rptr.2d 196.)
Added by the Legislature to former section 360 in 1994 (Stats.1994, ch. 900, § 1), subdivision (a) of section 360 was intended to create a new and alternative procedure for appointing a guardian when the parent acknowledges early in the dependency proceedings that he or she cannot, and will not be able to, even after family reunification services, provide adequate care for the child. As the author of the bill to add current subdivision (a) to section 360 observed, "[T]he dependency process needs tools that fit a variety of family situations. [U]nder current law the court may only grant a guardianship after 12 to 18 months of reunification services have been provided to the parents, and reunification has failed. [W]here the parent chooses to continue in a lifestyle that keeps [him or her] separated from the child, the court should have the option of granting the guardianship at an earlier stage, thus providing for more stability for the child." (Legis. Counsel's Dig., Sen. Bill No. 1407 (1993-1994 Reg. Sess.) as amended June 23, 1994, Comment.)

a. Section 360, subdivision (a), provides only one of several options available to the court at disposition

Under section 360, subdivision (b), if appropriate, the court may without adjudicating the child a dependent order that services be provided to keep the family together under the informal supervision of the Department. (§§ 360, subd. (b), 301; rule 1456(a)(2).) The court may also declare the child a dependent and order family maintenance services to ameliorate the conditions that made the child subject to the court's jurisdiction. (§ 362, subd. (a); rule 1456(a)(5).) Alternatively, if the court determines by clear and convincing evidence that the child cannot be returned to his or her home and removal from the physical custody of his or her parents is required to protect the child (§ 361, subd. (c)(1)-(4)) the court must first determine whether a noncustodial parent desires custody; and, if so, "the court shall place the child with the [noncustodial] parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (§ 361.2, subd. (a).)
If placement with a noncustodial parent is not an option, "the court shall order the care, custody, control, and conduct of the child to be under the supervision of the [county] social worker who may place the child" in an appropriate home. (§ 361.2, subd. (e).) "[P]referential consideration" for placement must be given to a child's relative. (§ 361.3, subd. (a) ["In any case in *688 which a child is removed from the physical custody of his or her parents pursuant to Section 361, preferential consideration shall be given to a request by a relative of the child for placement of the child with the relative."]; see also § 361.3, subd. (c)(2) [defining "relative" entitled to preferential consideration as "an adult who is a grandparent, aunt, uncle, or sibling"].) "In determining whether placement with a relative is appropriate, the county social worker and the court shall consider" a variety of factors, including the relative's prior criminal history and whether the placement is in "[t]he best interest of the child...." (§ 361.3, subd. (a), (a)(1); see also § 361.3, subd. (a)(1)-(7) [enumerating factors for court and county to consider in determining whether placement is appropriate].)

b. Section 361.4

Section 361.4 imposes further restrictions on the placement of a child in any home other than a licensed foster home: When a child has been removed from the physical custody of the parent or parents with whom the child was residing at the time the dependency proceedings were initiated and is to be placed with a relative, extended family member or any person (other than his or her noncustodial parent) who is not a licensed or certified foster parent, section 361.4 requires the court or the county social worker entrusted with placing the child to initiate the same state and federal level criminal records check and check of child abuse indices undertaken for applicants seeking a foster home license. (See § 361.4, subds. (b), (c).)[6] "If the criminal records check indicates that the person has no criminal record, the county social worker and the court may consider the home" for possible placement in accordance with a best-interest determination and other factors identified in section 361.3, subdivision (a)(1)-(7). (§ 361.4, subd. (d)(1).) However, "[i]f the criminal records check indicates that the person has been convicted of a crime that would preclude licensure [as a foster home] under section 1522 of the Health and Safety Code [that is, any crime other than a minor traffic violation], the child may not be placed in the home, unless a criminal records exemption has been granted by the county, based on substantial and convincing evidence to support a reasonable belief that the person with the criminal conviction is of such good character as to justify the placement and not present a risk of harm to the child . . . ." (§ 361.4, subd. (d)(2).)[7] "[I]n no event shall the *689 county place a child in the home of a person who is ineligible for an exemption" under Health and Safety Code section 1522, subdivision (g)(1) (making individuals with certain criminal convictions ineligible for exemptions). (§ 361.4, subd. (d)(3)(A).)
Not only the individual seeking the placement but also all other adults residing in the household must undergo a criminal records check. (§ 361.4, subds.(b), (c).) If one of the residents of the home in which the child is to be placed has a disqualifying conviction (however ancient) that would preclude licensure of the home as a foster home, section 361.4 prohibits the child from being placed in the home unless both the court and the county (by granting a criminal records exemption) agree the placement is in the child's best interests. (§ 361.4, subd. (d)(2); Los Angeles County Dept. of Children & Family Services v. Superior Court (2001) 87 Cal.App.4th 1161, 1168, 105 Cal.Rptr.2d 254 (Valerie A.); In re S.W. (2005) 131 Cal.App.4th 838, 850-852, 32 Cal.Rptr.3d 192.)[8]

3. Section 361.4's Criminal Records Exemption Requirement Does Not Circumscribe the Juvenile Court's Discretion to Order a Legal Guardianship Under Section 360

In determining whether the Legislature intended the juvenile court's discretion to appoint a legal guardian pursuant to section 360 to be circumscribed by the placement requirements of section 361.4, we examine first the words of both statutes because the statutory language is generally the most reliable indicator of legislative intent. (People v. Trevino (2001) 26 Cal.4th 237, 241, 109 Cal.Rptr.2d 567, 27 P.3d 283.) The statutory words must be given "their ordinary and usual meaning" (Hassan v. Mercy American River Hospital (2003) 31 Cal.4th 709, 715, 3 Cal.Rptr.3d 623, 74 P.3d 726; Trope v. Katz (1995) 11 Cal.4th 274, 282, 45 Cal. Rptr.2d 241, 902 P.2d 259) and construed in a manner that avoids absurdity or interpretations that would render part of the statute "meaningless or inoperative" (Manufacturers Life Ins. Co. v. Superior Court (1995) 10 Cal.4th 257, 274, 41 Cal. Rptr.2d 220, 895 P.2d 56). Furthermore, statutes are not to be read in isolation, but construed in context and "`with reference to the whole system of law of which [they are] part so that all may be harmonized and have effect. [Citations.]'" (Landrum v. Superior Court (1981) 30 Cal.3d 1, 14, 177 Cal.Rptr. 325, 634 P.2d 352.)
Section 360, subdivision (a), commences with the phrase, "Notwithstanding any other provision of law." "This phrase has a special legal connotation; it is considered an express legislative intent that the specific statute in which it is contained controls in the circumstances covered by that statute, despite the existence of some other law which might otherwise apply to require a different or contrary outcome." (Souvannarath v. Hadden (2002) 95 Cal. App.4th 1115, 1125-1126, 116 Cal.Rptr.2d 7; see also Caliber Bodyworks, Inc. v. Superior Court (2005) 134 Cal.App.4th 365, 383, fn. 17, 36 Cal.Rptr.3d 31 [statutory phrase "`notwithstanding any other law'" is a "`"term of art"' [citation] that declares the legislative intent to override all *690 contrary law"]; In re Marriage of Cutler (2000) 79 Cal.App.4th 460, 475, 94 Cal. Rptr.2d 156 ["notwithstanding any other provision of law" "signals a broad application overriding all other code sections"].)
The Department insists there is no conflict between sections 360 and 361.4. According to the Department, the Legislature intended that section 360 apply "notwithstanding" those statutes that would otherwise require an order of family reunification when warranted and did not intend to override section 361.4's specific requirement for a criminal records exemption before a child could be placed in a home where one of the adult residents has a disqualifying criminal conviction. No such purpose is expressed in the statute. (Day v. City of Fontana (2001) 25 Cal.4th 268, 272, 105 Cal. Rptr.2d 457, 19 P.3d 1196 [absent an ambiguity, plain language of statute controls].) Section 360 specifies that its provisions apply under the prescribed circumstances "[n]otwithstanding any other provision of law" and does not exclude section 361.4 from that directive. Moreover, the Department's cramped construction of section 360 is unnecessary to accomplish the purpose it advances. Wholly apart from section 360, section 361.5, subdivision (b)(14), provides that reunification services "need not be provided" when the parent "has advised the court that he or she is not interested in receiving family maintenance or family reunification services or having the child returned to or placed in his or her custody." Utilizing that provision the juvenile court at disposition can order the child removed from the physical custody of his or her parents, deny reunification services and proceed directly to a permanency planning hearing (§ 366.26) at which legal guardianship can be considered for the child. (See § 366.26, subd. (b)(3).) In light of this alternative path to legal guardianship, the interpretation of section 360 urged by the Department would make the entire provision essentially unnecessary and meaningless. (See Manufacturers Life Ins. Co. v. Superior Court, supra, 10 Cal.4th at p. 274, 41 Cal.Rptr.2d 220, 895 P.2d 56 [statutory interpretations that render terms meaningless or inoperative are to be avoided]; Select Base Materials v. Board of Equal. (1959) 51 Cal.2d 640, 645, 335 P.2d 672 [effect should be given whenever possible to every word and phrase of a statute so that no part is left without meaning].)
Although section 360, subdivision (a), was enacted four years prior to section 361.4, we presume, as we must, the Legislature was aware of section 360, subdivision (a), when it enacted section 361.4 in 1998 and similarly aware of section 361.4 when it amended section 360 in 1998 and again in 2002; yet, in neither statute did the Legislature alter the "[n]otwithstanding any other provision of law" directive in section 360 or otherwise make section 360 specifically subject to the limitations of section 361.4. (See Stats.1998, ch. 1054, § 22; Stats.2002, ch. 416, § 8; see, e.g., Peters v. Superior Court (2000) 79 Cal. App.4th 845, 850, 94 Cal.Rptr.2d 350 ["statutes are to be interpreted by assuming that the Legislature was aware of the existing law at the time of the [statute's] enactment"]; People v. McGuire (1993) 14 Cal.App.4th 687, 694, 18 Cal.Rptr.2d 12 [Legislature "`is deemed to be aware of statutes and judicial decisions already in existence, and to have enacted or amended a statute in light thereof'"].)
The Department asserts the Legislature's intent to make section 361.4 applicable to section 360 guardianships is, in fact, explicit in the language of section 361.4: By its terms, section 361.4 applies "[w]henever a child may be placed in the home of a relative or any prospective guardian or *691 other person who is not a licensed or certified foster parent." (§ 361.4, subd. (b) (italics added).) The Department's emphasis on "placement" is entirely correct but fails to support its position. Section 361.4 is a "placement" statute. It applies when a child has been removed from the physical custody of his or her parents pursuant to section 361 and put in the care, custody and control of the Department for placement within the foster-care system. (See, e.g., § 361.2, subd. (e) [when court orders removal of the child, "the court shall order the care, custody, control, and conduct of the child to be under the supervision of the social worker who may place the child" in the system]; Cheryl M., supra, 112 Cal.App.4th at p. 520, 5 Cal.Rptr.3d 182 [§ 361.4 is a placement statute; it applies to prospective "placements"].) Under those circumstances section 361.4 prohibits the Department from placing a child in its custody in any home that would be disqualified as a foster home under Health and Safety Code section 1522.
The legislative history of section 361.4 is instructive on this point. Enacted in 1998 as part of the Lance Helms Child Safety Act, section 361.4 was intended to address what the Legislature viewed as a troubling gap in the dependency laws. Prior to section 361.4's enactment, any person involved in the operation of a foster home was required to undergo a criminal background check as a prerequisite for licensing and was, absent an exemption from the director of the State Department of Social Services, disqualified from licensure if the background check revealed any conviction other than a minor traffic violation or certain specified arrests; however, no similar disqualification and exemption procedure existed for relatives with criminal backgrounds despite the legislatively declared preference for placing the child with a relative. Section 361.4 eliminates much of this disparity by imposing on relatives, prospective guardians and other persons (other than the child's noncustodial parent)[9] who are neither certified nor licensed foster parents the same disqualifications for criminal convictions imposed on prospective foster parents under Health and Safety Code section 1522. (See § 361.4, subd. (d)(2).); see also Sen. Com. on Judiciary, Analysis of Sen. Bill No. 645 (1997-1998 Reg. Sess.) ["Existing law provides preferential consideration for the placement of a child with a relative in any case where that child is removed from the physical custody of his or her parents." "[T]his bill will do more to protect children and provide them with a safe environment while in the system."].)
Lest there be any doubt about the Legislature's intent to equate a relative placement with traditional foster care and impose the same requirements on both, in 2001 the Legislature amended several placement statutes (including sections 309, 319, 361.2, and 361.3) to, among other things, add extended family members to the list of homes into which a dependent child who is under the care, custody, and control of a social worker may be placed. In amending those statutes[10] the Legislature *692 declared, "It is the intent of the Legislature to continue to promote the successful implementation of the statutory preference for foster care placement with relative caregivers. . . . [¶] The intent of the Legislature is to clarify that California's relative caregiver approval process employs the same standards used to license foster care homes." (Stats.2001, ch. 653, § 1.)
Unlike section 361.4, section 360 is not a foster-care placement statute. It is not dependent on the court-ordered removal of the child from the physical custody of his or her parent and concomitant placement of that child in the care, custody and control of the Department with the objective that the Department find an appropriate placement. (See, e.g., § 361.2, subd. (e).) Rather, section 360 is triggered by the custodial parent's express approval of both a guardianship for the child and the prospective guardian and the juvenile court's finding, based on all the evidence, including a statutorily prescribed review of the proposed guardian's criminal history (§ 360, subd. (a)(4)), that the proposed guardianship is in the child's best interests.
The Department's reliance on Valerie A., supra, 87 Cal.App.4th 1161, 105 Cal.Rptr.2d 254 is, therefore, misplaced. In Valerie A. Division Three of this court held that the juvenile court's discretion under section 319 to approve a temporary placement after a child has been detained and removed from her home is subject to the restrictions and disqualification provisions of section 361.4. The court explained that section 361.4's disqualification provision represented the Legislature's determination that, absent a criminal records exemption, "it would not be in the best interest of the dependent child to be placed with a relative with a disqualifying criminal conviction." (Valerie A., at p. 1168, 105 Cal.Rptr.2d 254.) In other words, when a child is removed from his or her parents after a detention hearing and the Department is temporarily vested with the child's care and custody to find an appropriate placement (pending a jurisdiction hearing), section 361.4 requires both the court and the exempting agency (now the Department) to agree that placement of a child with the relative is in the child's best interests before the child may be placed in the home. (Valerie A., at p. 1169, 105 Cal.Rptr.2d 254.)
As Valerie A., supra, 87 Cal.App.4th 1161, 105 Cal.Rptr.2d 254 suggests, there is little reason to distinguish between section 361.4's applicability when the child is removed from his or her parents' custody at detention and when the child is removed at disposition pursuant to section 361. In both situations the child's care, custody and control is vested with the Department to find an appropriate placement, with preference to be given to a relative who meets the standards applicable to foster parents. (See §§ 319, subds. (e), (f) [placement at detention] and 361.2, subd. (e) [placement at disposition].) Valerie A. thus stands for the proposition that, when *693 the child is entrusted to the care of the Department for placement in the foster-care system (whether at detention or at disposition), section 361.4 requires that the home into which the child is to be placed meet the same standards imposed on other foster placements. (See Valerie A., supra, 87 Cal.App.4th at p. 1168, 105 Cal.Rptr.2d 254 [at detention]; see also In re S. W., supra, 131 Cal.App.4th at pp. 850-852, 32 Cal.Rptr.3d 192 [§ 361.4 circumscribes placement following disposition].) Valerie A. did not consider whether section 361.4's disqualification provisions would apply to a section 360 guardianship. As we have explained, a guardianship ordered under section 360 is not a "placement."
The Department suggests (albeit without arguing directly) that that the Legislature could not have intended to impose the exemption requirement of section 361.4 on a guardianship ordered in connection with a permanency planning hearing under section 366.26, but not a guardianship ordered at disposition under section 360. The two statutes, however, address quite different situations. A guardianship order following a permanency planning hearing occurs only after the child has already been placed in the foster-care system and contains no parental consent requirement. A section 360 guardianship, in contrast, occurs at an early stage of the proceedings and requires parental consent. In this way, a section 360 guardianship more closely resembles one ordered by the probate court than one ordered late in the dependency proceedings pursuant to section 366.26.
When a guardianship is sought under the Probate Code, the probate court considers all of the evidence (including the proposed guardian's criminal history) to determine whether the guardianship is in the best interests of the child. (See Prob. Code, § 1514, subd. (b) [in appointing a guardian of a child, the court is governed by Fam.Code, § 3020]; Fam.Code, § 3020 ["it is the public policy of this state to assure that the health, safety, and welfare of children shall be the court's primary concern in determining the best interest of children when making any orders regarding the physical or legal custody or visitation of children"]; In re Guardianship of Ann S. (2006) 138 Cal.App.4th 644, 658, 41 Cal.Rptr.3d 709.) The Probate Code does not require that the guardian meet licensing standards applicable to foster parents, nor is there an automatic disqualification for persons with a criminal history.
Likewise, section 360 requires the court to review all the evidence, including the proposed guardian's criminal history, as part of a determination whether the guardianship approved by the parent is in the child's best interests. As is true under the Probate Code, nothing in section 360 indicates that the court's discretion is constrained by the disqualification provisions and criminal records exemption requirement applicable to foster-care placements. To be sure, a guardianship ordered pursuant to section 360 following a finding the child is a person described under section 300 is prompted by different concerns than one ordered under the probate court's jurisdiction. But, whether the parent's awareness of his or her inability to care for the child is prompted by a section 300 petition or some other internal or external signal under which the Probate Code would apply, the Legislature has expressed some preference for allowing the court to determine, unfettered by automatic disqualification requirements applicable to foster-care placements, whether a guardianship proposed or approved by the parent (at an early stage of the dependency proceedings) is in the child's best interests.
*694 We recognize that under the statutory scheme as described, a relative or other nonparent could be disqualified from consideration for placement following a temporary removal after detention pursuant to section 361.4 (Valerie, A., supra, 87 Cal.App.4th 1161, 105 Cal.Rptr.2d 254) (as in Christie P.'s case) but still be considered for a legal guardianship at disposition pursuant to section 360. This is not the incongruous result the Department suggests. The standards applied to the government's decision to remove a child from his or her parent's home and to place the child in a foster home, even temporarily, are understandably different and more rigorous than those used to evaluate a parent's own plan for his or her child. For example, when a section 300 petition is filed because a parent's impending incarceration or institutionalization precludes the parent from caring for his or her child, the juvenile court considers not whether the home of the parent's choice of an alternative caregiver would meet licensing standards applicable to a foster home (or, for that matter, even whether the parent's plan would be in the child's best interests), but only whether the parent's plan for his or her child during the parent's absence is "adequate." (See, e.g., In re Monica C. (1995) 31 Cal.App.4th 296, 305, 36 Cal.Rptr.2d 910 ["section 300, subdivision (g), requires only that an incarcerated parent arrange adequately for the care of the child during the period of his or her incarceration."].) If it is, there is no basis for the court to intervene to alter that plan and assume jurisdiction over the child. (In re S.D. (2002) 99 Cal.App.4th 1068, 1077, 121 Cal.Rptr.2d 518 ["If [mother] could arrange for care of [her child] during the period of her incarceration, the juvenile court would have had no basis to take jurisdiction in this case. . . ."].) Similarly, the inquiry for the court pursuant to section 360 is not whether the proposed guardian meets licensing requirements imposed on foster placements, but whether a plan for guardianship either developed or approved by the parent is in the child's best interests.[11]
In concluding the appointment of a legal guardian under section 360 is not subject to the criminal records exemption requirement of section 361.4, we do not suggest the Legislature intended to allow a person who is disqualified from being certified as a foster parent to become a child's legal guardian in all, or even most, circumstances. To the contrary, it will often be the case that, if the proposed guardian has a prior criminal record, the guardianship is not in the child's best interests. And the views of the Department as to the appropriateness of the proposed guardian and his or her home are certainly significant factors to be considered by the court in assessing whether the child's best interests will be served by approving the guardianship. But under section 360 as currently written, that determination is expressly left to the court, not the Department. If the Legislature in the future prefers to make section 360 subject to the disqualification provisions of section 361.4, it will no doubt amend the statute(s) to accomplish that result. (See Lopez v. Tulare Joint *695 Union High School Dist. (1995) 34 Cal.App.4th 1302, 1333-1334, 40 Cal.Rptr.2d 762.)

DISPOSITION
Let a peremptory writ of mandate issue directing respondent juvenile court to vacate its order of January 30, 2006 denying Rhonda W.'s motion to appoint Christie P. as legal guardian under section 360 and to conduct further proceedings not inconsistent with this opinion.
We concur: JOHNSON and ZELON, JJ.
NOTES
[1] Statutory references are to the Welfare and Institutions Code unless otherwise indicated.
[2] All references to rule or rules are to the California Rules of Court.
[3] Although Rhonda W. initially identified Christie P. as her sister, there is some inconsistency in the record as to whether Christie P. is a half-sister, a step-sister or a close family friend who was raised with Rhonda W.
[4] Summer's father's identity is allegedly unknown.
[5] In addition to having been convicted for theft and receipt of stolen property, Christie P. had also been arrested for assault with a deadly weapon and drug possession. Apparently, those arrests did not result in criminal convictions.
[6] Section 361.4, subdivision (b), provides, "Whenever a child may be placed in the home of a relative, or the home of any prospective guardian or other person who is not a licensed or certified foster parent, the court or county social worker placing the child shall cause a state and federal level criminal records check" in regard to "all persons over the age of 18 years living in the home" or other adult "who may have significant contact with the child" as a result of the placement. Subdivision (c) provides, "Whenever a child may be placed in the home of a relative, or a prospective guardian or other person who is not a licensed or certified foster parent, the county social worker shall cause a check of the Child Abuse Index. . . ."
[7] When originally enacted in 1998, section 361.4, subdivision (d)(3) (like Health and Saf. Code § 1522) authorized only the director of the Department of Social Services to grant a criminal records exemption. (See Stats.1998, ch. 949, § 4 ["Upon request from a county, the director of Social Services may waive the application of this section pursuant to standards established in paragraph (1) of subdivision (g) of Section 1522 of the Health and Safety Code."].) In 2001 section 361.4 was amended to allow a county to grant an exemption if the Department of Social Services gives it permission to do so. (§ 361.4, subd. (d)(2); In re S.W. (2005) 131 Cal.App.4th 838, 846-847, fn. 11, 32 Cal.Rptr.3d 192.)
[8] Section 361.4 applies to prospective placements. It does not require the removal of a child from an existing placement if the care-giver is subsequently convicted of a crime. In that circumstance, the juvenile court retains the discretion, unhindered by section 361.4's disqualification provisions, to determine whether allowing the child to continue to reside in the home is in the child's best interests. (Los Angeles County Dept. of Children & Family Services v. Superior Court (2003) 112 Cal.App.4th 509, 520, 5 Cal.Rptr.3d 182 (Cheryl M.); In re Miguel E. (2004) 120 Cal. App.4th 521, 545, 15 Cal.Rptr.3d 530.)
[9] Noncustodial parents are excluded from section 361.4's provisions presumably because placement with a noncustodial parent, like return of the child to his or her prepetition home, does not involve placing the child in the foster-care system. (See § 361.4, subd. (c) [defining "relatives" entitled to preferential consideration for placement as grandparent, aunt, uncle or sibling].) Thus, when a child has been removed and a noncustodial parent requests custody, "the court shall place" the child with the noncustodial parent if it would not be detrimental to the child's health and well-being. (§ 361.2, subd. (a).)
[10] In section 319, subdivision (f), placement in "a suitable home of a relative" was replaced with placement in "an approved home of a relative" or extended family member. (Stats.2001, ch. 653, § 9.) Section 361.2, subdivision (e), was amended to change the mandate for placement in the home of a relative to the "approved home of a relative" or extended family member. (Stats.2001, ch. 653, § 10, (italics added).) Section 361.3, subdivision (a)(8), was amended to make clear that preferential consideration for relatives requires that "the relative's home must first be approved" pursuant to the process and standards described in section 309, subdivision (d) (stats.2001, ch, 653, § 11); and section 309, subdivision (d), was amended to provide that "the standards used to determine suitability [of the home of a relative or extended family member] shall be the same standards set forth in the regulations governing the licensing of foster family homes." (See Stats. 2001, ch. 653, § 8.)
[11] Section 300, subdivision (g), prohibits the juvenile court from assuming jurisdiction in the event the parent's plan is adequate while a section 360 inquiry only occurs after the court has found the child to be a person described by section 300. Nonetheless, by making a legal guardianship ordered under section 360 contingent on parental approval, the Legislature has evidenced an intent (similar to that reflected in section 300, subdivision (g),) to give some deference to the parent's own plan for his or her child at an early stage of the dependency proceedings, provided (in the case of section 360) the plan is found to be in the child's best interests.