173 Cal.App.4th 1428 (2009)
___ Cal.Rptr.3d ___
In re G.W. et al., Persons Coming Under the Juvenile Court Law.
KERN COUNTY DEPARTMENT OF HUMAN SERVICES, Plaintiff and Appellant,
v.
T.C., Defendant and Respondent;
D.C., Respondent.
No. F056246.
Court of Appeals of California, Fifth District.
May 19, 2009.
*1432 B.C. Barmann, Sr., County Counsel, and Jennifer L. Thurston, Deputy County Counsel, for Plaintiff and Appellant.
Maureen L. Keaney, under appointment by the Court of Appeal, for Defendant and Respondent.
Donna Furth, under appointment by the Court of Appeal, for Respondent.
Mary Elizabeth Handy, under appointment by the Court of Appeal, for Minors.

*1433 OPINION
CORNELL, Acting P. J. 
The Kern County Department of Human Services (the agency) appeals from a juvenile court disposition order that appointed D.C. (hereafter stepgrandmother) the legal guardian of five of her six grandchildren born to T.C. (hereafter mother). The dispositional hearing occurred after the juvenile court found the allegations of the supplemental petition filed pursuant to Welfare and Institutions Code section 387[1] to be true.
The agency contends the juvenile court erred when it relied on section 360, subdivision (a) to appoint stepgrandmother the children's legal guardian. The agency asserts the juvenile court was required by California Rules of Court, rule 5.565(f),[2] to proceed directly to a Welfare and Institutions Code section 366.26 selection and implementation hearing.
It appears the juvenile court relied on section 360, subdivision (a) to avoid the requirements of section 361.4, which prohibits placement of a child with someone who has a criminal record unless an exemption is obtained from the agency. (Id., subd. (d)(2).) Stepgrandmother had a criminal record and the agency denied her request for an exemption.
(1) As we shall explain, the relevant statutes and cases lead us to conclude the disposition order must be reversed because the juvenile court erred in two respects. First, case law, as well as rule 5.565(f), required the juvenile court, on the facts before it, to proceed directly to a section 366.26 planning and implementation hearing. Second, the case on which the juvenile court relied in concluding that it could avoid the requirements of section 361.4, In re Summer H. (2006) 139 Cal.App.4th 1315 [43 Cal.Rptr.3d 682] (Summer H.), is inapplicable to a disposition held after the allegations in a supplemental petition have been sustained. Accordingly, the juvenile court erred in ignoring the requirements of section 361.4. We will remand the matter to the juvenile court to schedule a section 366.26 hearing and comply with the applicable statutes.

FACTUAL AND PROCEDURAL SUMMARY
There is no factual or procedural dispute in this case. Nor is a detailed recitation of facts necessary to resolve this legal dispute. Therefore, we will provide only a brief summary of the underlying facts.
*1434 Mother gave birth to six children by two fathers. L.B. fathered mother's oldest child, E.B., who was born in April 2002. Gr.W. fathered the remaining five children, K.W., G.W., T.W., L.W., and D.W. The two youngest children, L.W. and D.W., were born after the juvenile court assumed jurisdiction over the other four children. Petitions were filed on behalf of those two children shortly after birth and the juvenile court assumed jurisdiction over both children.
Mother's first contact with the agency occurred through family court. In approximately 2004, the family court gave legal guardianship of the three oldest children to mother's father (hereafter grandfather) and stepgrandmother. The legal guardianship was terminated in April 2006 because of grandfather's criminal history, including a recent arrest for driving while under the influence of alcohol. The children were returned to mother on the condition that she participate in the agency's voluntary family maintenance plan. Mother failed to comply with the terms and conditions of the plan, and it was terminated in less than one month.
Mother retained custody of the children until June 2006, when the agency filed a section 300 petition alleging that the four oldest children were at risk because mother failed to supervise or protect them adequately. The children were detained. The allegations of the petition as amended were found true at the jurisdictional hearing, the children were found to be dependents of the court, out-of-home placement was confirmed, and family reunifications services were ordered for the parents. A separate petition was filed when L.W. was born, and she was detained and placed in foster care.
At the six-month review hearing, the social study found that the parents had not met the objectives of the family reunification plan. The juvenile court ordered six additional months of services.
At the 12-month review hearing, services for the fathers L.B. and Gr.W. were terminated. Mother was provided with six additional months of services as she had made progress in her plan.
At the 18-month review hearing, four of the children, E.B., K.W., T.W. and D.W., were placed with mother. The 18-month review hearing for the two children who were not returned to the custody of mother was continued. It appears these two children were not returned to mother's custody because both children had serious health issues.
At the continued 18-month review hearing, the juvenile court returned custody of the remaining two children to mother over the agency's objections.
*1435 Less than one month later, a supplemental petition pursuant to section 387 was filed. The petition alleged that G.W. and L.W., the children with medical problems, had not been receiving their prescribed medications and were experiencing medical problems. In addition, mother had refused to allow the agency's representative to inspect her house to ensure the children's safety. All of the children were removed from mother's custody. The juvenile court ordered the children detained. Four months later, the juvenile court found it had jurisdiction over the children. The juvenile court also ordered the agency to assess stepgrandmother for placement of the children.
At the dispositional hearing, the juvenile court appointed stepgrandmother the legal guardian for all the children except L.W. The parties agreed that L.W.'s placement with a relative continue because of L.W.'s medical condition. A section 366.26 hearing was scheduled for L.W. The agency appeals from the order appointing stepgrandmother the legal guardian of the five children.

DISCUSSION
We are asked to decide whether the juvenile court had the authority to appoint stepgrandmother the legal guardian of the children after finding the allegations of the section 387 supplemental petition true. Relying on section 360, subdivision (a), the juvenile court believed it had such authority. To understand the arguments, we begin with a restatement of the goals of dependency proceedings.
(2) "The overarching goal of dependency proceedings is to safeguard the welfare of California's children. [Citation.] `Family preservation, with the attendant reunification plan and reunification services, is the first priority when child dependency proceedings are commenced. [Citation.] Reunification services implement "the law's strong preference for maintaining the family relationships if at all possible." [Citation.]' [Citation.] Reunification services are typically understood as a benefit provided to parents, because services enable them to demonstrate parental fitness and so regain custody of their dependent children. [Citation.]
"The legislative scheme reflects this reunification goal. With some limited exceptions ... section 361.5 requires the juvenile court to order child welfare services for both parent and child when a minor is removed from parental custody. Unless an exception applies, `whenever a child is removed from a parent's or guardian's custody, the juvenile court shall order the social worker to provide child welfare services to the child and the child's mother and statutorily presumed father or guardians.' [Citations.] `This requirement *1436 implements the law's strong preference for maintaining the family relationship if at all possible. [Citation.]' [Citation.]" (In re Nolan W. (2009) 45 Cal.4th 1217, 1228 [91 Cal.Rptr.3d 140, 203 P.3d 454].)
(3) The legislative scheme conforms to these goals. Once the juvenile court finds it has jurisdiction over a child, it is required to hold a timely disposition.[3] (§ 358, subd. (a).) The social worker is required to prepare a social study to aid the juvenile court in determining the appropriate disposition. (Id., subd. (b).) After receiving and considering evidence on the appropriate disposition, the juvenile court may (1) order a legal guardian be appointed for the child (§ 360, subd. (a)); (2) order informal services without adjudicating the child a dependent (id., subd. (b)); or (3) adjudge the child a dependent of the juvenile court (id., subd. (d)).
(4) If the child is adjudged a dependent, the juvenile court is required to order a plan with the goal of reunifying the family. Various services are to be provided to the parents to meet this goal. Review hearings are held throughout this period to track the progress of the parents and the welfare of the child. (§ 366.21.) At the six-month review hearing, the juvenile court is required to return the child to the custody of the parent or guardian, unless the court finds that return would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child. (Id., subd. (e).)
(5) A permanency hearing must be held no later than 12 months after the jurisdictional hearing. (§ 366.21, subd. (f).) The juvenile court is required to return the child to the parent or legal guardian unless it makes the same finding required at the six-month review hearing. (Ibid.) (6) At the hearing, the juvenile court is required to determine the permanent plan for the child, including a determination of whether and when the child will be returned to the parent or legal guardian. (Ibid.) If the child is not returned to the custody of the parent or legal guardian at this hearing, the juvenile court must (1) continue the permanency hearing for up to an additional six months if it finds that there is a substantial probability of return of the child to the parents within the extended time period, (2) order a selection and implementation hearing be held within 120 days pursuant to section 366.26, or (3) order that the child remain in long-term foster care if the child is not suitable for adoption and there is no one willing to be appointed a legal guardian. (§ 366.21, subd. (g)(1)-(3).)
(7) If the case proceeds to the selection and implementation hearing, the juvenile court has five options. In order of preference these options are: *1437 (1) terminate the rights of the parents and place the child for adoption; (2) appoint a relative with whom the child is currently residing as the legal guardian; (3) identify adoption as the permanent placement goal and order that efforts be made to locate an appropriate adoptive family; (4) appoint a nonrelative legal guardian; and (5) place the child in long-term foster care. (§ 366.26, subd. (b)(1)-(5).)
Here, the children were returned to mother before the case proceeded to the section 366.26 selection and implementation hearing. The agency, however, determined shortly thereafter that mother was not complying with the juvenile court's orders. Accordingly, it filed a supplemental petition pursuant to section 387.
(8) An order changing a previous order by removing a child from the physical custody of the parent may be made only after a supplemental petition has been filed (§ 387) and proper notice has been provided to all interested parties (§ 386). At the jurisdictional hearing, the parties are entitled to the same constitutional and procedural safeguards as at hearings on an original petition. (Rule 5.565(e)(1), (2); In re Antonio A. (1990) 225 Cal.App.3d 700, 706 [275 Cal.Rptr. 482].)
The parties do not challenge the jurisdictional findings in this case. Instead, the dispute arises out of the dispositional hearing. The juvenile court appointed stepgrandmother as the children's legal guardian pursuant to subdivision (a) of section 360. We, therefore, will review the requirements of this subdivision.
(9) Before the juvenile court may appoint a legal guardian pursuant to subdivision (a) of section 360, each of the following must occur: (1) the court must find that the child is a person described by section 300; (2) the parent must advise the court that he or she is not interested in family maintenance or family reunification services; (3) the court must determine that a legal guardianship is in the best interests of the child; (4) the parent and the child must agree to the appointment; (5) the court must advise the parent and child that reunification services will not be provided; and (6) the court must order an assessment of the person whom the court anticipates appointing as the legal guardian. (§ 360, subd. (a).) (10) The assessment must include: (1) documentation of the efforts made to notify the noncustodial parent of the hearing; (2) a review of the amount and nature of the contact between the parent and the child since the petition was filed; (3) an evaluation of the child's developmental, scholastic, medical, mental, and emotional status; (4) an assessment of the eligibility and commitment of the prospective guardian (social history, a screening for criminal records, a screening for prior referrals for child abuse or neglect, an evaluation of the proposed guardian's *1438 capacity to meet the child's needs, and an evaluation of the proposed guardian's understanding of the legal and financial rights and responsibilities of a legal guardianship); (5) an assessment of the nature of the relationship between the child and prospective guardian, including duration; and (6) an analysis of the likelihood that the child would be adopted if parental rights were terminated. (§ 360, subd. (a)(1)-(6).)
Although there is no reference in section 387 to the dispositional hearing, the rules of court specifically provide for the disposition after a supplemental petition is granted. Rule 5.565(f) states, "If a dependent child was returned to the custody of a parent or guardian at the 12-month review or the 18-month review or at an interim review between 12 and 18 months and a [section] 387 petition is sustained and the child removed once again, the court must set a hearing under section 366.26 unless the court finds there is a substantial probability of return within the next 6 months or, if more than 12 months had expired at the time of the prior return, within whatever time remains before the expiration of the maximum 18-month period."
Here, the children were returned to mother at the 18-month review hearing after the juvenile court provided her with six additional months of services. Shortly after the children were returned to mother, the section 387 petition was filed and sustained, resulting in the children once again being removed from mother's custody. Nonetheless, the juvenile court did not set a selection and implementation hearing pursuant to section 366.26 as required by rule 5.565(f). The juvenile court reasoned that a disposition hearing was required, and all of the options provided in section 360 were available. Relying on section 360, subdivision (a), the juvenile court appointed stepgrandmother the legal guardian of the children.
Apparently, the reason the juvenile court acted pursuant to section 360, subdivision (a) instead of setting a selection and implementation hearing pursuant to section 366.26 was stepgrandmother's criminal conviction and the limitations imposed by section 361.4.
(11) Section 361.4 provides that before a child can be placed with a relative, the agency must ascertain the appropriateness of the placement and must conduct a criminal background check of all persons living in the prospective home. (§ 361.4, subds. (a), (b).) If the criminal records check reveals that a person has been convicted of a crime, the child may not be placed in that home unless the crime was one for which the agency may grant an exemption pursuant to Health and Safety Code section 1522, and the agency grants an exemption. (Welf. & Inst. Code, § 361.4, subd. (d)(2).) *1439 Stepgrandmother had a conviction for misdemeanor willful cruelty to a child (Pen. Code, § 273a, subd. (b)), and the agency refused to grant her an exemption.[4]
By relying on section 360, subdivision (a), however, the juvenile court believed it could avoid the requirements of section 361.4. According to Summer H., supra, 139 Cal.App.4th 1315, this result is permissible because section 361.4 does not apply to the appointment of a legal guardian pursuant to section 360, subdivision (a). (Summer H., at p. 1321.)
(12) We conclude the juvenile court erred for two reasons. First, the juvenile court erred by failing to comply with rule 5.565(f). As stated ante, this rule requires the juvenile court, after sustaining a supplemental petition, to assess the status of the parent's reunification efforts and proceed to a section 366.26 selection and implementation hearing, unless there is a substantial probability of return of the children to the custody of the parent in the reunification time remaining. While it is true that a court is not bound by a rule of court, the "formal rules the Judicial Council adopts that interpret a statute, ... are entitled to a measure of judicial deference. Accordingly, [a rule's] interpretation of [a statute], although not binding on the courts and invalid if contrary to statute, is entitled to great weight and will be overturned only if it is clearly erroneous. [Citations.] We emphasize that this is merely deference, not abdication. Statutory construction remains ultimately a matter for the courts." (Sara M. v. Superior Court (2005) 36 Cal.4th 998, 1014 [32 Cal.Rptr.3d 89, 116 P.3d 550].)
In addition to failing to give deference to rule 5.565(f), the juvenile court also failed to follow this court's decision in Carolyn R. v. Superior Court (1995) 41 Cal.App.4th 159 [48 Cal.Rptr.2d 669] (Carolyn R.). Carolyn was the mother of two children who were removed from her custody pursuant to section 300. Approximately eight months later, the children were returned to Carolyn's custody. Approximately nine months later, the allegations of a supplemental petition filed pursuant to section 387 were found true and a disposition was set. Carolyn argued for 12 additional months of reunification services, even though she had received eight months of reunification services and 10 months of family maintenance services. Carolyn argued, in essence, that the "reunification services" clock began running again when the children were returned to her. The juvenile court disagreed and set the matter for a permanency planning hearing pursuant to section 366.26.
Carolyn argued that the juvenile court did not have the authority to proceed directly to a section 366.26 hearing, and that she was entitled to 12 additional *1440 months of services. Carolyn relied on the predecessor to rule 5.565(f) (former rule 1431(f)) to support her first argument. She asserted that the rule of court prevented the juvenile court from proceeding directly to a section 366.26 hearing after sustaining a section 387 petition, unless the children had been returned to the parent at or between the 12- and 18-month review hearings. (Carolyn R., supra, 41 Cal.App.4th at pp. 163-164.) While noting that neither the rule of court nor the statute expressly permitted the juvenile court to proceed directly to the section 366.26 hearing, we rejected the argument because Carolyn had received over 12 months of "child welfare services." (Carolyn R., at p. 164, italics added.) Thus, the juvenile court was proceeding within the parameters of section 366.26.
We also rejected Carolyn's demand for an additional 12 months of reunification services based on the assumption that the "reunification services" clock was reset when the children were returned to her. "To construe [section 361.5's] language as requiring the court to start services anew simply because a parent succeeded in temporarily regaining physical custody `would scuttle the purpose of the statute merely to preserve its form.' [Citation.] The mother ignores additional language in section 361.5, subdivision (a) which clearly states the time frame for services is not tolled for the time a child is in the parent's physical custody. [¶] `Physical custody of the minor by the parents or guardians during the 18-month period shall not serve to interrupt the running of the period.' [Citation.] [¶] This language obviously limits the section's mandate for services to the point in time which begins when the court initially orders a child removed from parental custody pursuant to section 361. [Citation.]" (Carolyn R., supra, 41 Cal.App.4th at p. 165, fn. omitted.)
Relying on the plain language of section 361.5, we also rejected mother's argument that she was entitled to 12 months of family reunification services, suggesting that family maintenance services should not be included in the time period. We noted that section 361.5 referred to "`child welfare services,'" which included, by definition, both family reunification services as well as family maintenance services. (Carolyn R., supra, 41 Cal.App.4th at pp. 165-166.)
Finally, this court summarized the principles applicable to a disposition after a supplemental petition has been sustained. "When a juvenile court sustains a supplemental petition pursuant to section 387, the case does not return to `"square one"' with regard to reunification efforts. [Citation.] Instead, the question becomes whether reunification efforts should resume. The answer is yes if: the parent has received less than 12 months of child welfare services (§§ 361.5, subd. (a), 366.21, subd. (e)); the parent did not receive reasonable child welfare services (§§ 366.21, subd. (g)(1), 366.22, *1441 subd (a)); or the case has passed the 12-month mark but there is a substantial probability the child will be returned within 18 months of the date the child was originally removed from the parent's physical custody (§ 366.21, subd. (g)(1)). Simply put, the court determines at what chronological stage of the 12- to 18-month period the case is for reunification purposes and then proceeds pursuant to section 366.21 or section 366.22 as appropriate. Failure to order additional reunification services when a court removes a child from parental custody incident to a section 387 petition is reversible error only if under the particular facts of the case the juvenile court abuses its discretion in failing to order such services. [Citation.]" (Carolyn R., supra, 41 Cal.App.4th at pp. 166-167, fns. omitted.)
While the issue in this case was not whether mother was entitled to additional reunification servicesthe parties appear to concede this was not an optionthe above summary should have guided the juvenile court's actions here. An analysis of the chronological stage of the case would have established that mother already had received 18 months of reunification services, and services for both fathers had been terminated. At this stage of the case, the only option left for the juvenile court at the dispositional hearing was to proceed to the section 366.26 selection and implementation hearing as required by rule 5.565(f). The failure of the juvenile court to do so was error.
The juvenile court's second error was in relying on Summer H. to justify its decision to place the children with stepgrandmother, despite the prohibition of section 361.4. An analysis of Summer H. demonstrates that it is not applicable to the facts of this case.
As stated above, the Summer H. court concluded that section 361.4 did not apply to the legal guardianship authorized by section 360, subdivision (a). The Summer H. court reached this conclusion, despite the seemingly mandatory language of section 361.4, subdivisions (b) ("Whenever a child may be placed in the home of a relative ... [the agency] shall cause a state-level criminal records check to be conducted . . . .") and (d)(2) ("If the criminal records check indicates that the person has been convicted of a crime ... the child may not be placed in the home.").
The Summer H. court began its analysis by noting that subdivision (a) was added to section 360 to "create a new and alternative procedure for appointing a guardian when the parent acknowledges early in the dependency proceedings that he or she cannot, and will not be able to, even after family reunification services, provide adequate care for the child." (Summer H., supra, 139 Cal.App.4th at p. 1325.) The court focused on the first six words of section 360, subdivision (a), "Notwithstanding any other provision of law." The court concluded this phrase evinced the intent to ensure section 360, *1442 subdivision (a) was available in every case, thereby in essence creating an exception to the criminal history prohibition embodied in section 361.4. (Summer H., at p. 1329.)
The court reasoned that the "placement" referred to in section 361.4, subdivision (b) ("Whenever a child may be placed in the home of a relative") (italics added) referred to the situation where the child has been removed from the physical custody of the parent and placed into custody of the agency for placement in the foster care system pursuant to the provisions of section 361. The court found support for its conclusion in the legislative history of section 361.4. The court characterized this legislative history as attempting to fill a gap in the applicable statutes. At the time section 361.4 was enacted, criminal background checks were required for any adult involved in foster care, but the checks were not required if the child was placed with a relative. According to the court, section 361.4 eliminated this double standard. (Summer H., supra, 139 Cal.App.4th at p. 1330.)
The court then noted that section 360, subdivision (a) was "not a foster care placement statute." (Summer H., supra, 139 Cal.App.4th at p. 1331.) "Rather, section 360[, subdivision (a)] is triggered by the custodial parent's express approval of both a guardianship for the child and the prospective guardian." (Ibid.)
Finally, the court distinguished between a guardianship ordered at a section 366.26 hearing and a section 360, subdivision (a) guardianship. "The two statutes, however, address quite different situations. A guardianship order following a permanency planning hearing occurs only after the child has already been placed in the foster care system and contains no parental consent requirement. A section 360 guardianship, in contrast, occurs at an early stage of the proceedings and requires parental consent. In this way, a section 360 guardianship more closely resembles one ordered by the probate court than one ordered late in the dependency proceedings pursuant to section 366.26. [¶] When a guardianship is sought under the Probate Code, the probate court considers all of the evidence (including the proposed guardian's criminal history) to determine whether the guardianship is in the best interests of the child. [Citations.] The Probate Code does not require that the guardian meet licensing standards applicable to foster parents, nor is there an automatic disqualification for persons with a criminal history. [¶] Likewise, section 360 requires the court to review all the evidence, including the proposed guardian's criminal history, as part of a determination whether the guardianship approved by the parent is in the child's best interests. As is true under the Probate Code, nothing in section 360 indicates that the court's discretion is constrained by the disqualification provisions and criminal records exemption requirement applicable to foster care placements." (Summer H., supra, 139 Cal.App.4th at pp. 1332-1333.)
*1443 The court also concluded that allowing a child removed from a home at the detention hearing to be placed in a relative's home only after a criminal records check pursuant to section 361.4 was consistent with its analysis. "The standards applied to the government's decision to remove a child from his or her parent's home and to place the child in a foster home, even temporarily, are understandably different and more rigorous than those used to evaluate a parent's own plan for his or her child. . . . Similarly, the inquiry for the court pursuant to section 360[, subdivision (a)] is not whether the proposed guardian meets licensing requirements imposed on foster placements, but whether a plan for guardianship either developed or approved by the parent is in the child's best interests." (In re Summer H., supra, 139 Cal.App.4th at pp. 1333-1334.) In a footnote to this last comment, the court again emphasized that the section 360, subdivision (a) option is available at an early stage of the proceedings: "Nonetheless, by making a legal guardianship ordered under section 360[, subdivision (a)] contingent on parental approval, the Legislature has evidenced an intent . . . to give some deference to the parent's own plan for his or her child at an early stage of the dependency proceedings, provided ... the plan is found to be in the child's best interests." (Summer H., at p. 1334, fn. 11.)
We have thoroughly analyzed Summer H. to point out the obvious inapplicability of its analysis to this case. The court in Summer H. found compelling the ability of a parent to decide at the earliest stage of the dependency proceeding, when it became clear that intervention was inevitable, to recognize his or her inability to parent a child successfully, give up that right, and assist in choosing a legal guardian for that child. Clearly, that situation is not present here.
Mother went through 18 months of reunification efforts (reunification for both fathers was terminated at the 12-month review), regained custody of her children for a few days, and then again had the children removed from her home. Mother did not, at an early stage of the proceedings, refuse reunification services and request the children be placed with stepgrandmother. Therefore, even if we accept without question the analysis in Summer H., it is inapplicable to this case because mother's decision to agree to have stepgrandmother appointed the legal guardian for the children came only after she exhausted all her attempts to retain custody of the children.
The procedural posture of this case reinforces this conclusion. The children were first removed from mother's custody on June 22, 2006. One of the children, G.W., was less than a year old on this date. On June 27, 2006, the juvenile court detained the children, thus removing them from mother's custody. On November 7, 2006, the juvenile court found it had jurisdiction and immediately proceeded to the dispositional hearing. The juvenile court *1444 ordered the children removed from the custody of mother and ordered reunification services for her. Mother did not suggest a legal guardian be appointed for the children at this hearing.
The six-month review hearing was held on April 16, 2007. The juvenile court continued the out-of-home placement of the children and found that mother had made minimum efforts to avail herself of the reunification services offered by the agency. Reunification services were ordered for an additional six months. Mother did not suggest the children be placed with a legal guardian at this hearing.
The permanency hearing was held on August 22, 2007. The juvenile court found mother had made "acceptable efforts" toward reunification and services were continued until the next review date. Mother did not suggest the children be placed with a legal guardian at this hearing.
The permanency review hearing was held on December 21, 2007, for four of the children, and on February 6, 2008, for the other two children. These hearings resulted in the children being returned to mother after the juvenile court found she had made substantial progress in her case plan, with the last child being returned to mother on February 6, 2008. Despite this progress, the children again were removed from the custody of mother on March 10, 2008, with the supplemental petition that is the subject of this appeal being filed shortly thereafter. It was only after this petition was sustained on July 23, 2008, and it became clear to all involved that mother would not reunify with her children, that mother requested stepgrandmother be appointed the children's guardian.
Unlike Summer H., mother did not advise the juvenile court at the initial disposition that she wished to have stepgrandmother appointed the legal guardian of the children. Nor did mother waive the right to services. Instead, she received family reunification services for 18 months. Mother's request for guardianship did not occur at an early stage of the proceedings, but instead occurred only after the children had been placed in foster care for an extended period of time.
We need not decide whether we think Summer H.'s analysis should be limited to the first dispositional hearing on an original petition, or any other possible limitations. We hold only that the Summer H. analysis does not apply at the disposition of a supplemental petition. Therefore, the trial court here was obligated to comply with section 361.4 when it placed the children in a legal guardianship, and it erred when it failed to do so.

*1445 DISPOSITION
The order appointing stepgrandmother the legal guardian of the children is reversed and the matter is remanded to the juvenile court with directions to schedule a section 366.26 hearing and proceed according to the requirements of the statute.
Dawson, J., and Kane, J., concurred.
NOTES
[1] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.
[2] Further rule references are to the California Rules of Court.
[3] The following general overview is intended only to frame the issues in this case and is not intended to be, nor is it, an exhaustive review of the dependency legislation. Numerous statutory requirements are omitted because they are not relevant to the issue before us.
[4] The conviction arose from an incident in which stepgrandmother drove her vehicle while intoxicated with an unrestrained child in the vehicle.