180 Cal.App.4th 413 (2009)
In re L.A. et al., Persons Coming Under the Juvenile Court Law.
SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND CHILDREN'S SERVICES, Plaintiff and Respondent,
v.
PATRICK A., Defendant and Appellant.
No. H034276.
Court of Appeals of California, Sixth District.
December 18, 2009.
*417 Lee Gulliver, under appointment by the Court of Appeal, for Defendant and Appellant.
Miguel Marquez, Acting County Counsel, and Harrison Taylor, Deputy County Counsel, for Plaintiff and Respondent.
No appearance for Minors.

OPINION
BAMATTRE-MANOUKIAN, Acting P.J.

INTRODUCTION
Welfare and Institutions Code section 360, subdivision (a),[1] authorizes the juvenile court to order a legal guardianship for a child who has been found to be described by section 300, when a parent has advised the court that he or she is not interested in family maintenance or family reunification services and the parent and child agree to the guardianship. However, the court cannot *418 appoint a legal guardian under the section until an assessment is read and considered by the court and reflected in the minutes of the court. The assessment shall contain statutorily specified information, including the "[c]urrent search efforts for, and notification of, a noncustodial parent in the manner provided in Section 291." (§ 360, subd. (a)(1).)[2]
In this case, Patrick A., father of the two children at issue, appeals from a juvenile court dispositional order removing the children from his home, *419 placing them in the custody of their paternal grandparents, and ordering family reunification services for both father and the children's mother, Sabrina O. Father contends that the court erred in refusing his request to order a legal guardianship for the children under section 360, subdivision (a), because the court determined that mother had not waived reunification services. As we conclude that the court had the discretion to order a legal guardianship under section 360, subdivision (a), and then to order the required assessment report, which would include information on the Santa Clara County Department of Family and Children's Services's efforts to contact and notify mother, we will reverse the dispositional order and remand the matter for a new dispositional hearing. Prior to the hearing, the clerk of the court shall notify mother of the hearing in the manner provided in section 291. If mother is properly noticed and is not present at the hearing or waives her right to family reunification services, father waives his right to family reunification or family maintenance services, and the court finds that a legal guardianship is in the best interests of the children, the court may order a legal guardianship and an assessment report as specified in section 360, subdivision (a).

BACKGROUND
On December 6, 2008, Morgan Hill police officers noticed father outside a motel smoking what appeared to be marijuana. At the time, father was out on bail for a prior incident of resisting arrest. When the officers asked father to extinguish his joint, father rushed into a motel room and locked it. The officers saw the children, aged four and three, inside the room, but father would not allow the officers inside. The officers broke down the door and found the room filled with marijuana smoke and the children hiding by the bed, crying. The children reported that father had flushed "`green stuff'" that "`smells really bad'" down the toilet while the officers were trying to enter the room. The officers found marijuana on a low shelf that also held the children's toys, and on the floor of the bathroom. Father attempted to fight two officers and was eventually arrested. The officers contacted an emergency social worker who took custody of the children.
The children were ordered detained on December 11, 2008. They were placed with their paternal grandparents at the grandparents' request on or around February 4, 2009.
On April 16, 2009, the Santa Clara County Department of Family and Children's Services (the Department) filed second amended petitions under *420 section 300, subdivisions (b) (failure to protect) and (g) (no provision for support) as to both children. The petitions alleged that father was arrested, convicted, and incarcerated for child endangerment, evading a peace officer, battery on a peace officer with personal injury, resisting arrest, and destruction of evidence. Father's prior criminal history includes several felony convictions going back to 1996, including for domestic violence, and the children have witnessed their parents engaging in physical altercations. Mother was convicted of felony child endangerment, driving under the influence, and hit and run, in 2004, after crashing a vehicle in which one of the children was a passenger. Mother's prior criminal history includes a 2001 conviction for driving under the influence, and mother is on probation until December 31, 2009. However, mother's current whereabouts were unknown.
The social worker's report and amendments for the jurisdiction hearing recommended that the petitions be sustained, that the children remain in out-of-home care, and that both parents receive family reunification services. Mother was released from jail in early December 2008. Mother's probation officer had a warrant issued for mother's arrest on January 29, 2009, because mother was in violation of probation for not complying and her whereabouts were unknown. Mother calls the children periodically, but they are frustrated and disappointed because they do not hear from her on a regular basis. The social worker had telephone contact with mother on March 11, 2009,[3] and mother stated that she was aware that the children were with their paternal grandparents and that father was in jail, but that she did not have any information on how to contact the social worker. Mother stated that she was living near her family in Sacramento, that she did not know her address, and that she was not on probation. The social worker informed mother of the address and time of a court hearing scheduled for March 13, 2009, but mother did not attend the hearing. Prior to their removal, the children had been residing with the paternal grandparents at the grandparents' home since September 2007, and father had also lived with them when he was not incarcerated. Since their removal, the children have had regular weekly contact visits with father at Elmwood. Father expected to be released from Elmwood in August 2009, but he has an outstanding warrant from San Benito County. The paternal grandparents reported that they would seek legal guardianship or adoption if the parents do not reunite with the children.
Father was present with counsel at the jurisdiction hearing on April 17, 2009. Counsel for the Department submitted its report and addendums and *421 asked the court to sustain the second amended petitions. Counsel for the Department then stated that, "after discussions out of court with counsel for the father, he is going to submit on the petition, and he is going to waive service and we're going to propose a legal guardianship with the grandparents and I will submit an order after hearing on that." Father's counsel stated, "Father understands that he has . . . reunification [as] his option and right. And he is aware of the case planning recommendation but I don't believe we did a formal waiver of reunification service in order to." Father informed the court that he had reviewed the petition and discussed it with counsel, and that he waived his trial rights. The court found the allegations in the second amended petitions to be true, and that the children come within the provisions and description of section 300, subdivisions (b) and (g). It then continued the matter for two weeks for disposition.
Father was not present at the scheduled disposition hearing on May 1, 2009, but was represented by counsel. Counsel stated that "what is unknown to me at this point is the extent to which service has or hasn't been accomplished according to the requirements of [section] 291 . . . . [T]he mother is out there somewhere but we're not exactly sure where, and I'm not sure what the status of the notice is, and so that mayI certainly would think that if notice is still a problem, then it would be inappropriate to go forward with the [section] 360 [subdivision] (a) guardianship that has been proposed. [¶] What the other question is, though, in terms of if notice has been proper, there is another whole legal question to be answered, and that is whether or not the Court can order [a section] 360 [subdivision] (a) guardianship without the consent of the absent parent." Counsel for the Department stated, "The [section] 360 [guardianship] is a fast track to legal guardianship, but even if that was not available to us there is another way to go to the legal guardianship, it would just take longer." The court continued the matter to May 15, 2009, so that the parties could brief the issues.
On May 15, 2009, father filed a brief contending that (1) if notice and due diligence to contact mother have been made, her presence in order to advise the court of her lack of desire to receive family reunification or maintenance services is not necessary for the court to issue letters of guardianship pursuant to section 360, subdivision (a); and (2) father need not fill out a formal waiver of reunification services form in order for the court to have authority to order a guardianship under section 360, subdivision (a). A blank waiver of reunification services form was attached to the brief. The Department filed a brief contending that "both parents must waive their right to services in order for the court to order a legal guardianship under Section 360, subdivision (a). *422 Counsel for the minors supports this position." In the brief, the Department stated that on March 18, 2009, mother had left a message for the social worker stating that she was not able to arrange transportation to the March 13, 2009 hearing, and that she was returning to the Bay Area soon and would get in touch with her.
Father was present with counsel at the continued May 15, 2009 hearing. The court thanked the parties for their briefs and stated that it was "going to follow the Department's recommendation." It found that section 360, subdivision (a) "seems to require the participation of the parent. And we don't have that here because mom is not here." Father argued that mother was not entitled "to get reunification services under the law, because she is not here. . . . She has not come forward." Counsel for the Department noted that "the mother was not noticed by the court clerk. The court gave, the clerk gave notice to the father, he was in jail but the mother's whereabouts were unknown so she has not had formal notice." Father acknowledged that the court could not make the required finding that mother had been properly noticed if she had not been. "If that hasn't happened I don't think we can do anything today. I think that she has to be noticed." Counsel for the children agreed that the "issues of whether we can proceed on a [section] 360, [subdivision (a) guardianship] are moot until we provide notice of this." Counsel for the Department stated that they would try to find mother, and the court continued the matter.
On May 22, 2009, the Department filed a brief contending that the court could take jurisdiction over the children and make dispositional orders "as long as reasonable efforts have been made to give mother notice of the proceedings," and that "reasonable efforts have been made to give the mother notice of these proceedings." Attached to the brief was a declaration of diligence prepared and signed by a Department investigating social worker, outlining her attempts between December 8, 2008, and April 21, 2009, to contact mother. The attempts included the use of mother's former mailing address in San Jose and the cell phone numbers and the email address that the paternal grandparents had for her.
Father was present with counsel at the continued hearing on May 22, 2009. Counsel for the Department stated that its recommendation was for family reunification services for both parents, as both parents must waive their right to receive services before the court can order a legal guardianship. Counsel for the child agreed with the Department that the court could proceed to disposition, but that it could not order a guardianship under section 360 *423 without having mother's waiver of her right to services. Father argued that mother has had the "opportunity to participate in and exercise her constitutional rights," and that "[h]er absence from here indicate[s] her unwillingness to participate. And we believe that the court therefore has the power, . . . has the ability to go forth with [an order of legal guardianship]."
The court ruled as follows: "[A]fter considering the arguments both in court and in the cases cited in the briefs the court is going to find that Welfare and Institutions Code [section] 360 does in this case require mom to waive and we need her. At least that is how the court reads the statute. She is not here unfortunately. And so the court is going to follow the recommendation in [the social worker's] report." The court then set the review hearing for November 13, 2009.

DISCUSSION
Father contends that the court erred in finding that mother's explicit waiver of reunification services and consent for a guardianship is needed prior to ordering a legal guardianship under section 360, subdivision (a), as mother was a noncustodial and disinterested parent who had been properly noticed of all hearings but who had never appeared. He argues that written notification to mother of the hearings was impossible because she refused to give her mailing address, her probation officer did not know her whereabouts, and the Department was not able to locate her. The Department's email notification of the May 1, 2009 disposition hearing informed mother that legal guardianship for the children was an issue and that it was important that the court hear her position. However, mother did not respond. "As a result, she waived any reunification services to which she may have been entitled because she did not appear in court and specifically request them as a non-custodial parent is required to do. . . . Therefore, since mother had no right to such services, the court erred in denying a guardianship on the grounds that mother had not formally waived them."
The Department contends that the court properly determined that both parents were required to waive reunification services in order for the court to order a legal guardianship under section 360, subdivision (a). The Department argues that mother was statutorily entitled to reunification services, so that a waiver of services by both her and father was "an absolute prerequisite for the Court to order a legal guardianship for the children under Section 360(a)." Counsel for the children has not filed a brief.
*424 "The overarching goal of dependency proceedings is to safeguard the welfare of California's children. [Citation.] `Family preservation, with the attendant reunification plan and reunification services, is the first priority when child dependency proceedings are commenced. [Citation.] Reunification services implement "the law's strong preference for maintaining the family relationships if at all possible." [Citation.]' [Citation.] Reunification services are typically understood as a benefit provided to parents, because services enable them to demonstrate parental fitness and so regain custody of their dependent children. [Citation.]
(1) "The legislative scheme reflects this reunification goal. With some limited exceptions . . . section 361.5 requires the juvenile court to order child welfare services for both parent and child when a minor is removed from parental custody. Unless an exception applies, `whenever a child is removed from a parent's or guardian's custody, the juvenile court shall order the social worker to provide child welfare services to the child and the child's mother and statutorily presumed father or guardians.' [Citations.] `This requirement implements the law's strong preference for maintaining the family relationship if at all possible. [Citation.]' [Citation.]" (In re Nolan W. (2009) 45 Cal.4th 1217, 1228 [91 Cal.Rptr.3d 140, 203 P.3d 454] (Nolan W.).)
"Of course, reunification services need not be provided to a parent who does not wish to maintain the family unit, and who makes an informed decision to reject them. . . . [S]ection 361.5, subdivision (b)(14) allows the parent to `waive[]' such services, where the waiver is expressed in writing, executed while the parent is represented by counsel, and accompanied by an advisement of the possible consequences, including the termination of parental rights and placement of the dependent child for adoption. ([Citation]; see also § 360, subd. (a) [parental decision to forgo reunification may lead to establishment of legal guardianship].) Nothing in the statutory scheme . . . suggests there are any limits on the time for waiving reunification services and relinquishing the parental role. (See § 361, subd. (b) [parent may `voluntarily relinquish' dependent child to state welfare or county adoption agency `at any time'].) The Legislature has thus ensured that the most deficient and reluctant parents are not forced to undergo or continue reunification against their will." (Nolan W., supra, 45 Cal.4th at p. 1240 (conc. & dis. opn. of Baxter, J.); see also In re Jonathan R. (1989) 211 Cal.App.3d 1214, 1220 [259 Cal.Rptr. 863].)
(2) "Under the current statutory scheme dependency proceedings in which a child is removed from his or her home typically involve four phases: *425 jurisdiction, disposition, reunification and implementation of a permanent plan if reunification is unsuccessful. (See generally Cynthia D. v. Superior Court (1993) 5 Cal.4th 242, 247-250 [19 Cal.Rptr.2d 698, 851 P.2d 1307].)" (In re Summer H. (2006) 139 Cal.App.4th 1315, 1324 [43 Cal.Rptr.3d 682].) "Once the juvenile court finds it has jurisdiction over a child, it is required to hold a timely disposition. (§ 358, subd. (a).) The social worker is required to prepare a social study to aid the juvenile court in determining the appropriate disposition. (Id., subd. (b).) After receiving and considering evidence on the appropriate disposition, the juvenile court may (1) order a legal guardian be appointed for the child (§ 360, subd. (a)); (2) order informal services without adjudicating the child a dependent (id., subd. (b)); or (3) adjudge the child a dependent of the juvenile court (id., subd. (d))." (In re G.W. (2009) 173 Cal.App.4th 1428, 1436 [94 Cal.Rptr.3d 53], fn. omitted.)
(3) "[S]ection 360[, subdivision (a)] is triggered by the custodial parent's express approval of both a guardianship for the child and the prospective guardian . . . ." (In re Summer H., supra, 139 Cal.App.4th at p. 1331; see In re G.W., supra, 173 Cal.App.4th at p. 1442.) It is "an alternative procedure for appointing a guardian when the parent acknowledges early in the dependency proceedings that he or she cannot, and will not be able to, even after family reunification services, provide adequate care for the child." (In re Summer H, supra, 139 Cal.App.4th at p. 1325.) "A section 360 guardianship. . . occurs at an early stage of the proceedings and requires parental consent. In this way, a section 360 guardianship more closely resembles one ordered by the probate court than one ordered late in the dependency proceedings pursuant to section 366.26." (In re Summer H., supra, 139 Cal.App.4th at p. 1332; see In re G.W., supra, 173 Cal.App.4th at p. 1442.)
(4) "Before the juvenile court may appoint a legal guardian pursuant to subdivision (a) of section 360, each of the following must occur: (1) the court must find that the child is a person described by section 300; (2) the parent must advise the court that he or she is not interested in family maintenance or family reunification services; (3) the court must determine that a legal guardianship is in the best interests of the child; (4) the parent and the child must agree to the appointment;[4] (5) the court must advise the parent and child that reunification services will not be provided; and (6) the court must order an assessment of the person whom the court anticipates appointing as the legal guardian. (§ 360, subd. (a).)" (In re G.W., supra, 173 Cal.App.4th at p. 1437.) "The `purpose of this statutorily required preliminary assessment is *426 to provide the juvenile court with the information necessary to determine whether the guardianship is in the child's best interests . . . and whether the prospective guardian is an appropriate person to assume the duties of guardianship.' [Citation.]" (In re Summer H., supra, 139 Cal.App.4th at p. 1325.)
"The assessment must include: (1) documentation of the efforts made to notify the noncustodial parent of the hearing; (2) a review of the amount and nature of the contact between the parent[s] and the child since the petition was filed; (3) an evaluation of the child's developmental, scholastic, medical, mental, and emotional status; (4) an assessment of the eligibility and commitment of the prospective guardian (social history, a screening for criminal records, a screening for prior referrals for child abuse or neglect, an evaluation of the proposed guardian's capacity to meet the child's needs, and an evaluation of the proposed guardian's understanding of the legal and financial rights and responsibilities of a legal guardianship); (5) an assessment of the nature of the relationship between the child and prospective guardian, including duration; and (6) an analysis of the likelihood that the child would be adopted if parental rights were terminated. (§ 360, subd. (a)(1)-(6).)" (In re G.W., supra, 173 Cal.App.4th at pp. 1437-1438.)
(5) Accordingly, a juvenile court may properly establish a legal guardianship for the children at issue when the court agrees with the parent and child that it is in the best interests of the child to do so. (§ 360, subd. (a).) However, section 360, subdivision (a) does not apply when the parent and child are not in agreement at the disposition hearing. In this case, father and counsel for the children agreed that a guardianship was in the best interests of the children, but disagreed as to whether the court had the authority to order one under section 360, subdivision (a). Father contends that the "use of the term `the parent' when considered with the notification requirement to the non-custodial parent implies that the custodial parent can waive his/her reunification services and that the court can proceed with a guardianship without the appearance or express waiver of the non-custodial parent if that person has been properly noticed." We agree.
(6) "In construing a statute, our task is to determine the Legislature's intent and purpose for the enactment. [Citation.] We look first to the plain meaning of the statutory language, giving the words their usual and ordinary meaning. [Citation.]" (People v. Garcia (2002) 28 Cal.4th 1166, 1172 [124 Cal.Rptr.2d 464, 52 P.3d 648].) "[W]e presume the Legislature meant what it said. [Citation.]" (Ibid.) "`The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is *427 contrary to the legislative intent apparent in the statute. . . . An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in light of the statutory scheme [citation]; and if a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed [citation].' [Citations.]" (People v. Shabazz (2006) 38 Cal.4th 55, 67-68 [40 Cal.Rptr.3d 750, 130 P.3d 519].)
(7) Reading section 360, subdivision (a), as a whole, we find that the Legislature intended to authorize the juvenile court to order a legal guardianship at the disposition hearing when the custodial parent agrees to waive reunification services and that parent, the child (when appropriate), and the court agree that it is in the best interests of the child. The statute states that, "if the court finds that the child is a person described by Section 300 and the parent has advised the court that the parent is not interested in family maintenance or family reunification services, it may . . . order a legal guardianship, appoint a legal guardian, and issue letters of guardianship, if the court determines that a guardianship is in the best interest of the child, provided the parent and the child agree to the guardianship . . . ." (§ 360, subd. (a).) However, before appointing a legal guardian under the statute, the statute requires the court to read and consider an assessment report. "No person shall be appointed a legal guardian under this section until an assessment . . . is read and considered by the court and reflected in the minutes of the court." (Ibid.) The assessment report must include information on the "[c]urrent search efforts for, and notification of, a noncustodial parent in the manner provided in Section 291." (§ 360, subd. (a)(1).)
(8) Section 291 provides that notice should be given to the noncustodial parent unless that parent's address is unknown, then notice can be given to a relative residing in the county or an adult relative residing nearest the court (§ 291, subd. (a)(7)), and the notice shall state that, if they fail to appear, the hearing may proceed without them (id. at subd. (d)(6)(A)). Accordingly, if the noncustodial parent's whereabouts are unknown or that parent otherwise indicates a reluctance or disinclination to be involved in the dependency proceedings or to receive services to allow him or her to parent the child, that parent's express waiver of reunification services is not required. To interpret section 360, subdivision (a) to require the noncustodial parent to expressly waive reunification services, even in situations where that parent is aware of but declines to participate in proceedings that would determine the placement of the child, would be unreasonable and contrary to the legislative scheme governing dependency proceedings. The statute contemplates that the whereabouts of a noncustodial parent may be unknown or that the parent may refuse to participate in the juvenile court proceedings, and specifies that information concerning the effort to contact and notify the noncustodial parent must be included in the assessment report that must be read and *428 considered by the court before the court appoints the legal guardian and issues letters of guardianship under the statute.
In this case, by the time of the disposition hearing, the children had been living in the home of their paternal grandparents for some 20 months, their father was incarcerated, and the whereabouts of their mother were unknown, although she had been in sporadic contact with the children and the social worker. At the disposition hearing, once father and counsel for the children agreed to a guardianship, the court had the authority to order a legal guardianship and a continuance of the hearing so that an assessment report could be prepared by the Department that would include all the information set forth in section 360, subdivision (a). Only after the court read and considered the assessment, which must include information on the attempts of the Department to contact and receive a waiver of reunification services for the children's mother, could the court appoint the paternal grandparents, or any other person or persons, as the children's legal guardians and issue letters of guardianship. (§ 360, subd. (a).)
(9) The juvenile court here declined to order a guardianship, a continuance, and the preparation of an assessment report, and instead ordered reunification services for both parents. "`[A] ruling otherwise within the trial court's power will nonetheless be set aside where it appears from the record that in issuing the ruling the court failed to exercise the discretion vested in it by law. [Citations.]' [Citation.] `Failure to exercise a discretion conferred and compelled by law constitutes a denial of a fair hearing and a deprivation of fundamental procedural rights, and thus requires reversal. [Citations.]' [Citation.]" (People v. Downey (2000) 82 Cal.App.4th 899, 912 [98 Cal.Rptr.2d 627].) "The fundamental liberty interest of natural parents in the care, custody, and management of their child[ren] does not evaporate simply because they have not been model parents or have lost temporary custody of their child[ren] to the State." (Santosky v. Kramer (1982) 455 U.S. 745, 753 [71 L.Ed.2d 599, 102 S.Ct. 1388].) (10) Father here was entitled to waive services and request that the court order a legal guardianship for his children. It appears from the record that in ordering reunification services for both parents the court believed it did not have the discretion to order a legal guardianship as requested by father and the children and the preparation of an assessment report as mother had not yet explicitly waived her right to reunification services. Accordingly, we will reverse the dispositional order and remand the matter for a new disposition hearing to allow the court to exercise its discretion to order a legal guardianship and the preparation of an assessment report as specified in section 360, subdivision (a).

*429 DISPOSITION
The disposition order of May 22, 2009, is reversed, and the matter is remanded for a new disposition hearing. Prior to the hearing, the clerk of the court shall notify mother of the hearing as provided in Welfare and Institutions Code section 291. If mother is properly noticed and is not present at the hearing or waives her right to family reunification services, father waives his right to family reunification or family maintenance services, and the court finds that a guardianship is in the best interests of the children, the court may order a legal guardianship and the preparation of an assessment report as provided in section 360, subdivision (a).
McAdams, J., and Duffy, J., concurred.
NOTES
[1] All further statutory references are to the Welfare and Institutions Code.
[2] Section 360, subdivision (a) states: "After receiving and considering the evidence on the proper disposition of the case, the juvenile court may enter judgment as follows: [¶] (a) Notwithstanding any other provision of law, if the court finds that the child is a person described by Section 300 and the parent has advised the court that the parent is not interested in family maintenance or family reunification services, it may, in addition to or in lieu of adjudicating the child a dependent child of the court, order a legal guardianship, appoint a legal guardian, and issue letters of guardianship, if the court determines that a guardianship is in the best interest of the child, provided the parent and the child agree to the guardianship, unless the child's age or physical, emotional, or mental condition prevents the child's meaningful response. The court shall advise the parent and the child that no reunification services will be provided as a result of the establishment of a guardianship. The proceeding for the appointment of a guardian shall be in the juvenile court. [¶] Any application for termination of guardianship shall be filed in juvenile court in a form as may be developed by the Judicial Council pursuant to Section 68511 of the Government Code. Section 388 shall apply to this order of guardianship. [¶] No person shall be appointed a legal guardian under this section until an assessment as specified in subdivision (g) of Section 361.5 is read and considered by the court and reflected in the minutes of the court. The assessment shall include the following: [¶] (1) Current search efforts for, and notification of, a noncustodial parent in the manner provided in Section 291. [¶] (2) A review of the amount of and nature of any contact between the child and his or her parents since the filing of the petition. [¶] (3) An evaluation of the child's medical, developmental, scholastic, mental, and emotional status. [¶] (4) A preliminary assessment of the eligibility and commitment of any identified prospective guardian, particularly the caretaker, to include a social history including a screening for criminal records and prior referrals for child abuse or neglect, the capability to meet the child's needs, and the understanding of the legal and financial rights and responsibilities of guardianship. [¶] (5) The relationship of the child to any identified prospective guardian, the duration and nature of the relationship, the motivation for seeking guardianship, and a statement from the child concerning the guardianship, unless the child's age or physical, emotional, or other condition precludes the child's meaningful response, and if so, a description of the condition. [¶] (6) An analysis of the likelihood that the child would be adopted if parental rights were terminated. [¶] The person responsible for preparing the assessment may be called and examined by any party to the guardianship proceeding."

Section 291 states in relevant part: "After the initial petition hearing, the clerk of the court shall cause the notice to be served in the following manner: [¶] (a) Notice of the hearing shall be given to the following persons: [¶] (1) The mother. [¶] . . . [¶] (7) If there is no parent or guardian residing in California, or if the residence is unknown, then to any adult relative residing within the county or if none, the adult relative residing nearest the court. [¶] . . . [¶] (d) The notice shall include all of the following: [¶] . . . [¶] (6) A statement that: [¶] (A) If they fail to appear, the court may proceed without them. [¶] . . . [¶] (e) Service of the notice of the hearing shall be given in the following manner: [¶] (1) If the child is detained and the persons required to be noticed are not present at the initial petition hearing, they shall be noticed by personal service or by certified mail, return receipt requested."
[3] Mother was contacted using a cell phone number that the paternal grandparents then had for her.
[4] The child need not agree to the guardianship if "the child's age or physical, emotional, or mental condition prevents the child's meaningful response." (§ 360, subd. (a).)