Filed 5/3/16  In re A.A. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re A.A., a Person Coming Under the Juvenile Court Law. | B265772 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MACK A.,<br><br>    Defendant and Appellant. | (Los Angeles County Super. Ct. No. DK03550) |

APPEAL from orders of the Superior Court of Los Angeles County,

Steff Padilla, Juvenile Court Referee.  Reversed and remanded with directions.

Ernesto Paz Rey, under appointment by the Court of Appeal, for Defendant and

Appellant.

Office of the County Counsel, Mary C. Wickham, County Counsel,

Dawyn R. Harrison, Assistant County Counsel, and Stephen D. Watson, Deputy County

Counsel, for Plaintiff and Respondent.

**INTRODUCTION**

Appellant Mack A. (Mack) appeals from the juvenile court's pre-disposition orders denying him visitation with A.A. based on his alleged father status and granting A.A.'s mother, Monique H. (mother), a three-year restraining order against him. Mack contends the court erred by failing to exercise its discretion when it denied him visitation with A.A. We reverse and remand with directions for the court to hold a new hearing to clarify its paternity findings and reconsider Mack's request for visitation with A.A. in light of those findings.

**FACTUAL AND PROCEDURAL BACKGROUND**

### 1. The Initiation of Dependency Proceedings

A.A. was born in 2002. Mack claims he is A.A.'s biological father. A.A. has two half-siblings: M.A., who was born in 2005, and Marcus B. (Marcus), who was born in 2013.[1] M.A. and Marcus each have different fathers, neither of whom is a party to this appeal; mother, M.A., and Marcus also are not parties to this appeal.

The family came to the Department of Children and Family Services' (Department) attention in December 2013, when the Department received a referral alleging F.B., Marcus' father, had physically abused A.A. and M.A. and had engaged in domestic violence with mother. On February 19, 2014, the Department filed a dependency petition pursuant to Welfare and Institutions Code[2] section 300, subdivisions (a), (b), (d), and (j) (original petition). The original petition alleged: (1) that F.B. had physically abused A.A. and M.A. and mother had failed to keep F.B. away from the children (counts a-1, a-2, b-1, b-2, j-1, j-2); (2) F.B. and mother had engaged in domestic violence in front of the children (counts a-3, b-3); and (3) F.B. has a criminal history involving sexual offenses (counts b-4, d-1). Only mother and F.B. are

---

[1]  We sometimes collectively refer to A.A., M.A., and Marcus as "the children."

[2]  All further undesignated statutory references are to the Welfare and Institutions Code.

named as offending parents in the original petition. The court detained the children from F.B.'s custody and placed them with mother.

As of February 19, 2014, Mack's whereabouts were unknown. He contacted the Department on April 8, 2014 to request visitation with, but not custody of, A.A. Mack told a Department social worker that although he had had no contact with A.A. for at least two years, he had been in contact with her from the time she was born until she was eight years old. He claimed that he had not been able to contact A.A. recently because mother had moved to Lancaster. Mother, however, claimed that Mack had not been involved in A.A.'s life since she was three months old.

Around early July 2014, the Department discovered that mother had allowed F.B. to continue to live with her and the children. On July 2, 2014, the Department obtained an emergency removal order removing the children from mother's custody and placing them with Janice C., their maternal great-grandmother.[3] On July 8, 2014, the Department filed an amended petition, adding an allegation under section 300, subdivision (b) that mother had failed to protect the children by allowing F.B. to remain in her home (count b-5). At the July 8, 2014 detention hearing on the amended petition, the court detained the children from mother's custody and placed them with Janice.

Mack made his first appearance in A.A.'s dependency case on September 15, 2014. At that hearing, he filed a request for the court to find that he is A.A.'s presumed father. In his request, Mack claimed that he had held himself out as A.A.'s father by telling members of his family that A.A. is his daughter and by visiting with A.A. when

---

[3]     There is confusion in the record as to whether Janice is the children's maternal grandmother or maternal great-grandmother. In its July 8, 2014 report, the Department refers to Janice as the children's "maternal grandmother"; however, in the court's July 8, 2014 minute order, and the Department's reports filed after July 8, 2014, Janice is referred to as the children's "maternal great-grandmother." To be consistent, we will refer to Janice as the children's maternal great-grandmother. There is also confusion as to the correct spelling of Janice's name. In its July 8, 2014 report, the Department spells her name "Janis"; however, in its subsequent reports, the Department spells her name "Janice." We use "Janice" throughout this opinion.

she was younger, including having overnight visits with her. However, he admitted that he has never provided financial support for A.A.'s care.

The same day Mack appeared in A.A.'s case, mother filed a request for a restraining order against him, seeking to protect herself and A.A. In her request, mother alleged that Mack had physically, mentally, and sexually abused her during a three-year relationship that began when she was 16 years old and he was 25 years old. Mother alleged that Mack had threatened to kill her several times during their relationship, including on one occasion when he put a gun in her mouth. Mother also alleged that Mack continues to threaten her and often drives by her home unannounced. The court granted mother a temporary restraining order and scheduled a noticed hearing on whether to grant a three-year restraining order.

In November 2014, the Department interviewed mother, Mack, Janice, and mother's stepfather about Mack's relationship with A.A and the allegations in mother's restraining order request. Mother reported that A.A. did not know the identity of her father, and that she did not know Mack because he never visited her. Mother told the Department that although Mack had not threatened her recently, she was still afraid of him and would suffer from panic attacks when she saw him in public. She reported that during her three-year relationship with Mack, he had abducted, raped, and threatened to kill her, once holding her at gunpoint. Janice and mother's stepfather confirmed that Mack had abducted mother when she was a teenager, and Janice confirmed that he had held her at gunpoint and threatened her life. Mack denied that he and mother had a history of domestic violence. He claimed that A.A. knows who he is because he had visited her "a few times" until she was eight. However, he has had no contact with A.A. since then because mother has refused to let him visit her.

### 2. The Hearing on Mack's Paternity Request and Mother's Request for a Restraining Order

In March and April 2014, before adjudicating the amended petition, the court conducted a multi-day hearing on Mack's request to establish paternity and mother's request for a restraining order. Both Mack and mother testified at the hearing.

4

In connection with paternity, Mack testified as follows. He is A.A.'s biological father. He was at the hospital when A.A. was born, but did not sign her birth certificate because he was married to another woman at the time. Nevertheless, he told his wife and other members of his family that he was A.A.'s father. Mack admitted that he has never provided mother any financial support for A.A.'s care.

Mack visited A.A. every year until she was eight years old. He claimed that when A.A. was between four and eight years old, she spent the night at his house on four or five occasions. However, he did not know if A.A. recognized him as her father because she never referred to him as such. Mack has not been able to visit A.A. since she was eight years old because mother moved and he does not know where she and A.A. now live. Although he claimed mother would try to prevent him from contacting A.A., Mack never attempted to establish parental rights over, or obtain legal custody of, A.A. before appearing in her dependency case.

In connection with mother's request for a restraining order, Mack testified as follows. He never put a gun to mother's mouth or otherwise threatened to kill her. He also has never threatened to hurt A.A. Mack denied that he has ever driven or walked by mother's house in Lancaster.

In turn, mother's testified she met Mack when she was 16 years old while she was living in a foster home. Mack started to abuse her several months after they met, and he would control most aspects of her life, including what she ate and when she slept. Mother first became pregnant by Mack when she was around 17 years old, but she had an abortion on her 17th birthday. She became pregnant again, this time with A.A., while she was still a teenager. She did not dispute that Mack is A.A.'s biological father, but she claimed that he had forced her to have sex with him around the time A.A. was conceived.

Mother was able to get away from Mack after A.A. was born, and he has not physically abused her since A.A. was a toddler. However, he continued to harass her, most recently in 2012 when he called and threatened "to kill [her] and [her] daughter." Mother never reported Mack's alleged rape, abuse, and threats to the police. Although

she tried on at least two prior occasions to obtain a domestic violence restraining order against Mack, her requests were denied due to her failure to prosecute them.

Mother denied that Mack had ever been involved in A.A.'s life. She claimed that A.A. had never seen Mack until he appeared in her dependency case, and that A.A. did not know who Mack was until mother told her at an earlier hearing in 2015 that he was her father.

### 3. The Court's Rulings

On April 22, 2015, the court ruled on mother's request for a restraining order. The court issued a three-year restraining order against Mack, which named both mother and A.A. as protected persons. In granting the restraining order, the court found mother's testimony about Mack's past acts and threats of violence credible. Although Mack had not acted out violently toward mother in the recent past, his conduct while they were in a relationship was "so grave" that it warranted issuing a restraining order to protect mother against future acts or threats of violence.

The court then ruled on Mack's paternity request, after which it denied Mack's request for visitation with A.A. and relieved Mack's counsel. The court's paternity findings are unclear. Although the court found Mack is not A.A.'s presumed father, it did not clearly state that it found Mack to be A.A.'s alleged or biological father. Specifically, in explaining its ruling, the court alternated between referring to Mack as A.A.'s biological father *and* A.A.'s alleged father. For example, the court stated as follows: "As to paternity, I'm finding that [Mack] is merely an alleged [father]. He said it himself, 'I didn't push hard enough.' If you want to go from an alleged father to a presumed father -- the most recent cases talk about you can't . . . be a biological father and be an imperfect father. You have to do everything within your power. And it's because you want to be in another relationship, and you want to do all this other stuff, and you're not pushing hard enough . . . . [¶] So I'm making a finding he does not rise to the level of presumed [father]. He is merely an alleged -- he is merely a biological father. He is not a presumed father at this time." When Mack's counsel asked the court whether it would grant Mack visitation with A.A., the court stated, "[A]s to the

6

child . . . he's an alleged father. And he's an alleged father so he's not entitled to visits. . . . [¶] I'm not ordering visits at this time until we have -- I would like to have a trial. So we need to set this matter for trial on the other issues -- on the rest of the petition."

The following exchange then occurred between the court, mother's counsel, and Mack's counsel:

> Mother's Counsel: I thought I heard the court say that [Mack] was only an alleged father. And then the court said, "or a biological [father]."

> The Court: He's a biological father.

> Mother's Counsel: That has not ever been determined through science. [Mother] has said he's the biological father.

> The Court: And he's said he's the biological father. It's past the three years.

> Mother's counsel: I just wanted to clarify, you know, what that meant.
>
> ***
>
> Mack's Counsel: Your honor, I'm not sure what I still am to do in this case.

> The Court: You are hereby relieved.

> Mack's Counsel: So he's an alleged [father] only and not to be given any visits at all?

> The Court: No, not at this point.

The court's minute order from the April 22, 2015 hearing reflects that the court found Mack to be A.A.'s biological father. The minute order does not include a ruling denying Mack visitation with A.A. The three-year restraining order does, however, state that Mack has no right to visit with A.A. Mack filed a timely notice of appeal from the court's April 22, 2015 orders.

The jurisdiction and disposition hearing was conducted on June 8, 2015.[4] Mack was not present at that hearing. The court sustained the petition as to mother and F.B and placed the children in Janice's home. The court granted mother reunification services, including unmonitored visitation with the children. The court denied Mack, M.A., and F.B. reunification services, and made no visitation order as to Mack.

## DISCUSSION

### 1. The April 22, 2015 Restraining Order is Directly Appealable

The Department argues Mack's appeal should be dismissed because he is not challenging an appealable order. According to the Department, under section 395, Mack cannot appeal from the court's April 22, 2015 orders because they were issued before the court's dispositional orders.[5] (See *In re Cassandra B.* (2004) 125 Cal.App.4th 199, 208 (*Cassandra B.*) [in dependency cases, orders starting chronologically with the court's dispositional orders generally are the first appealable judgments].) Mack responds by advancing two arguments: first, he appealed from the court's order issuing a three-year restraining order against him, which is directly appealable (see *id.* at p. 208 ["a restraining order issued in a juvenile dependency proceeding is directly appealable to the same extent as a restraining order granted in a civil action," even when the restraining order is issued before the court's dispositional orders]; see also *Loeffler v. Medina* (2009) 174 Cal.App.4th 1495, 1502, fn. 9 [a trial court's order granting a restraining order is appealable under Code of Civil Procedure section 904.1, subdivision (a)(6)]); and second, the court relieved his counsel at the April 22, 2015 hearing, effectively ending his participation in A.A.'s dependency case. Because Mack appeals from the three-year restraining order issued against him, and

---

[4]    On our own motion, we take judicial notice of the juvenile court's minute order from the June 8, 2015 jurisdiction and disposition hearing, which is not included in the record on appeal. Accordingly, we deny as moot Mack's November 17, 2015 request to take judicial notice of the minute order from that hearing.

[5]    Section 395 provides in relevant part: "A judgment in a proceeding under Section 300 may be appealed in the same manner as any final judgment, and any subsequent order may be appealed as an order after judgment." (§ 395, subd. (a)(1).)

8

because that order precludes him from visiting with A.A., we conclude Mack's challenge to the court's denial of his request for visitation with A.A. is reviewable on direct appeal.[6] (See *Cassandra B.*, *supra*, 125 Cal.App.4th at p. 208; *Loeffler*, *supra*, 174 Cal.App.4th at p. 1502, fn. 9.) Accordingly, we turn to the merits of Mack's appeal.

## 2. The Court Erred in Denying Mack Visitation Without Exercising its Discretion

Mack contends the court erred in denying him visitation with A.A. on the basis that he is A.A.'s alleged father. He argues that because he is actually A.A.'s biological father, a finding the court appeared to make when ruling on his paternity request, the court should have exercised its discretion in determining whether to grant his request for visitation with A.A. Because the court's findings as to Mack's paternity status are unclear, and because those findings served as the basis for the court's denial of Mack's request for visitation with A.A., we reverse and remand the matter with directions for the court to conduct a new hearing for the limited purpose of clarifying its findings as to Mack's paternity status and enter a ruling concerning visitation in accordance with those findings.

In the dependency context, there are three statuses a man claiming to be a minor's father can achieve: (1) an alleged father; (2) a biological or natural father; and (3) a presumed father. (See *In re Zacharia D.* (1993) 6 Cal.4th 435, 448 (*Zacharia D.*).) "A man who may be the father of a child, but whose biological

---

[6]      We requested supplemental briefing from the parties to address whether Mack's appeal should be dismissed because he did not appeal from the court's June 8, 2015 jurisdiction and disposition orders even though the court stated at the April 22, 2015 hearing that it would reconsider the issue of visitation at the jurisdiction and disposition hearing. We agree with Mack's counsel that the appeal should not be dismissed. After the court indicated at the April 22, 2015 hearing that it intended to reconsider the issue of visitation at a future hearing, it relieved Mack's counsel. There is nothing in the record to indicate that Mack was provided notice and an opportunity to appear at the jurisdiction and disposition hearings to present arguments and evidence as to why he should be granted visitation with A.A. Therefore, the April 22, 2015 hearing effectively was the last opportunity for Mack to request visitation with A.A.

9

paternity has not been established, or, in the alternative, has not achieved presumed father status, is an 'alleged' father." (*Id*. at p. 449, fn. 15.) "A biological or natural father is one whose biological paternity has been established, but who has not achieved presumed father status as defined in Civil Code section 7004." (*Ibid*.) Finally, a presumed father, who does not need to be the minor's biological father, is generally one who " 'receives the child into his home and openly holds out the child as his natural child.' [Citation.]" (*Id*. at p. 449.) In other words, "presumed father status is based on the familial relationship between the man and child, rather than any biological connection." (*In re J.L.* (2008) 159 Cal.App.4th 1010, 1018 (*J.L.*).)

A father's status is critical in a dependency case because it dictates the extent to which he can participate in the case and the reunification services to which he is entitled. (*In re Christopher M.* (2003) 113 Cal.App.4th 155, 159.) A presumed father is accorded greater rights than either a biological or an alleged father. (*Zacharia D., supra,* at pp. 448-449; see also *J.L.*, *supra*, 159 Cal.App.4th at p. 1018.) "[O]nly a presumed, not a mere biological, father is a 'parent' entitled to receive reunification services under section 361.5." (*Zacharia D.*, *supra*, 6 Cal.4th at p. 451.) Accordingly, to deny reunification services to a presumed father, the court must make specific findings set forth in section 361.5, subdivision (b). (See *Francisco G. v. Superior Court* (2001) 91 Cal.App.4th 586, 597 (*Francisco G.*).) However, unlike an alleged father, to whom a dependency court may outright deny reunification services, a biological father may receive reunification services "if the court determines that the services will benefit the child." (§ 361.5, subd. (a); *Francisco G.*, *supra*, 91 Cal.App.4th at p. 597; see also *In re O.S.* (2002) 102 Cal.App.4th 1402, 1410.) Thus, in determining whether to grant a biological father's request for reunification services, including visitation, the court should exercise its discretion to determine whether doing so would be in the child's best interest. (See *Francisco G.*, *supra*, 91 Cal.App.4th at p. 597 ["As to a biological father, the issue [of whether to grant reunification services] is left to the discretion of the juvenile court and its determination of the benefit to the child of providing services"].)

Here, the court twice stated that it was denying Mack's request for visitation with A.A. because he is an alleged father and, as such, he is not entitled to visitation with A.A. However, as noted, the court also stated that it found Mack to be A.A.'s biological father.[7] Accordingly, if the court did intend to find Mack to be A.A.'s biological father, it should have exercised its discretion in determining whether to grant his request for visitation with A.A., rather than denying that request solely because of Mack's status as an alleged father. (See *Francisco G.*, *supra*, 91 Cal.App.4th at p. 597.) There is nothing in the record to indicate that the court did so.

For similar reasons, we reject the Department's contention that we can infer that the court found it would not be in A.A.'s best interest to grant Mack visitation with her based on the evidence supporting the restraining order and the court's findings supporting its issuance of that order. Given that the court was not aware that it could exercise its discretion to grant Mack visitation with A.A. as her biological father we will not speculate that it would have determined that any visitation, including monitored visitation, with A.A. would have been denied based on the restraining order. (See *In re L.A.* (2009) 180 Cal.App.4th 413, 428 [" ' "[f]ailure to exercise a discretion conferred and compelled by law constitutes a denial of a fair hearing and a deprivation of fundamental procedural rights, and thus requires reversal. [Citation.]" [Citation.]' "].) We also note that the form on which the court issued the restraining order against Mack includes a provision allowing for the restrained party to visit with a child who is also protected by the restraining order's terms. Thus, the fact that the court found it was appropriate to grant the restraining order protecting both mother and A.A. does not necessarily establish that the court found it would not be in A.A.'s best interest to allow Mack some form of visitation with A.A.

---

[7] Although the court's April 22, 2015 minute order also states that the court found Mack to be A.A.'s biological father, the court's oral pronouncement as reflected in the reporter's transcript, and not the minute order contained in the clerk's transcript, controls. (*In re J.P.* (2014) 229 Cal.App.4th 108, 118, fn. 4.) Accordingly, we are unable to conclude based on the April 22, 2015 minute order that the court actually found Mack to be A.A.'s biological, and not alleged, father.

11

**DISPOSITION**

The juvenile court's orders of April 22, 2015 are reversed insofar as the court denied Mack visitation with A.A. The matter is remanded to the juvenile court with directions to conduct a new hearing, for which Mack shall be appointed counsel, for the limited purpose of making appropriate findings as to Mack's paternity status. Once the court makes such findings, it shall reconsider Mack's request for visitation with A.A. in light of those findings. We express no opinion as to how it should exercise its discretion in ruling on Mack's paternity status or request for visitation with A.A. in light of that status.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, J.

WE CONCUR:

EDMON, P. J.

HOGUE, J.[*]

---

[*]   Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.