Filed 9/30/21  In re Kai F. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re KAI F., a Person Coming Under the Juvenile Court Law. | B310934 (Los Angeles County Super. Ct. No. 20CCJP01233) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MICHELLE M.,<br><br>Defendant and Appellant. | |

APPEAL from an order the Superior Court of Los Angeles County, Lisa A. Brackelmanns, Judge Pro Tempore.  Affirmed.

William Hook, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and William D. Thetford, Principal Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

Michelle M. (mother) challenges the juvenile court's denial of her attorney's request to continue the dispositional hearing. Because this was mother's second nonappearance in a row (despite proper notice), the court did not abuse its discretion in denying the request. We accordingly affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.     Facts

Michelle M. (mother) and Art F. (father) have one child, Kai F. (born June 2017).

For the first six months of his life, Kai lived with his parents in a trailer located on the back portion of the paternal grandparents' property. During this period, mother and father used marijuana on a daily basis in Kai's presence. Father would also enter the paternal grandparents' home, steal and pawn items, and use the proceeds to purchase prescription pills and alcohol to ingest along with marijuana. Mother and father also had heated verbal arguments in Kai's presence, and those verbal disputes sometimes became physical; on one occasion, mother inflicted a cut on father's neck.

When Kai was approximately six months old, the paternal grandparents became so concerned for his well-being that they took him into *their* home. Mother and father terminated their romantic relationship around that time, and mother started living in abandoned buildings.

On February 10, 2020, father got into a verbal fight with paternal grandfather and left with Kai. Father, mother and Kai

2

then started living together again as they moved from motel room to motel room.

## II.   Procedural Background

### A.   *Petition*

On March 2, 2020, the Los Angeles Department of Children and Family Services (the Department) filed a petition asking the juvenile court to exert dependency jurisdiction over Kai.  In the operative first amended petition, the Department alleged that jurisdiction was warranted because (1) mother and father each have a "history of substance abuse including marijuana and alcohol" that renders them "incapable of providing regular care and supervision" and thus places Kai "at risk of serious physical harm" (thereby rendering jurisdiction appropriate under Welfare and Institutions Code section 300, subdivision (b)(1)),[1] and (2) mother and father have a "history of domestic violence including the parents engaging in heated arguments that include yelling, screaming and cursing the presence of the child" and thus places Kai "at risk of physical and emotional harm, damage and danger" (thereby rendering jurisdiction appropriate under section 300, subdivision (b)(1)).

At a hearing on March 3, 2020, the juvenile court ordered Kai detained from parents and placed with the paternal grandparents.  The court also told the parents that "it is very important that you be [at future proceedings] . . . These are very important proceedings that we want you to be a part of."

---

[1]     All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

3

**B.    *Statements and conduct prior to the jurisdictional hearing***

Mother admitted to using marijuana.  Father initially admitted to using marijuana, but later disavowed any drug use and also denied having a criminal record, despite having suffered a documented 2018 conviction for driving under the influence of alcohol and drugs.

Mother and father denied any domestic violence.  Neither mother nor father showed up to any of the random drug tests the juvenile court ordered at the detention hearing.

**C.    *Jurisdictional hearing***

The juvenile court conducted the jurisdictional hearing on September 25, 2020, and both mother and father were present. The juvenile court sustained all of the allegations in the first amended petition, and set the dispositional hearing for November 18, 2020.

**D.    *Dispositional hearings***

Both mother and father attended the hearing on November 18, 2020.  Mother requested a continuance to explore the propriety of naming the paternal grandparents as Kai's legal guardians by parental consent pursuant to section 360, subdivision (a).  Over the Department's objection, the juvenile court granted mother's request, ordered the Department to investigate the paternal grandparents' fitness to serve as legal guardians and continued the dispositional hearing to January 4, 2021.  The court expressly ordered both parents to return to court on January 4, 2021.

The Department conducted its investigation, concluding that the paternal grandparents were "committed to" Kai and were "appropriate for [l]egal [g]uardianship."

4

Mother was present for the January 4, 2021 hearing, but father was not. The juvenile court concluded that service on both parents had been proper, but continued the hearing until February 4, 2021, so that father could be re-served.

Neither mother nor father showed up for the February 4, 2021 hearing, despite proper service of the notice of hearing and mother being present at the prior hearing when the February 4 date was set. The court emphasized the need to obtain both parents' waiver of reunification services and both parents' consent to the creation of the legal guardianship. The court "continue[d] the hearing" to the "next week," and asked the Department to give notice, asked mother's and father's attorney to contact their clients, and asked the parental grandfather to notify the parents of the upcoming hearing during their next visitation with Kai. The court indicated that, if the parents did not appear at the next hearing, "we might have to proceed another way."

On February 11, 2021, father appeared but mother did not. Mother's attorney proffered no explanation for mother's absence. Mother's attorney nevertheless said that her "last instruction" from mother was to (1) ask for a further continuance, or, alternatively, (2) for a dispositional order that (a) placed Kai back with mother and father or granted them unmonitored visitation, and (b) had a minimal case plan for mother. The juvenile court implicitly denied the continuance request; instead, the court ordered reunification services for mother and father, removed Kai from their custody and placed him with the paternal grandparents, and laid out a case plan for mother that required her to attend a drug and alcohol program, to attend parenting

5

classes, to participate in mental health counseling, and to participate in individual counseling.

**E.** *Appeal*

Mother filed this timely appeal.

## DISCUSSION

Mother argues that the juvenile court erred in denying her February 11 request to continue the dispositional hearing to allow her an additional opportunity to show up, waive her right to reunification services, and consent to a legal guardianship with the paternal grandparents. We review the denial of a continuance for an abuse of discretion. (*In re D.Y.* (2018) 26 Cal.App.5th 1044, 1056.)

A juvenile court has the discretion to continue a dependency proceeding upon a showing (1) of "good cause," and (2) that a continuance is "not contrary to the interest of the [child]," which gives "substantial weight" to (a) the child's "need for prompt resolution of [the child's] custody status," (b) "the need for provide children with stable environments," and (c) "the damage to a [child] of prolonged temporary placements." (§ 352, subds. (a)(1) & (a)(2); Cal. Rules of Court, rule 5.550(a).) Where, as is the case here, a parent seeks to continue the dispositional hearing of a non-Indian child more than 60 days after the hearing at which the child was first ordered detained, the requirement of "good cause" is elevated to a requirement of "exceptional circumstances." (§ 352, subd. (b); Cal. Rules of Court, rule 5.690(d).) Because time is of the essence with children, continuances in juvenile dependency cases are "discouraged" and "difficult to obtain." (*In re Emily D.* (2015) 234 Cal.App.4th 438, 448; *Jeff M. v. Superior Court* (1997) 56 Cal.App.4th 1238, 1242; see generally, § 352, subd. (a)(1) [juvenile court must "give

6

substantial weight to [the child's] need for prompt resolution of his or her custody status"].)

The juvenile court did not abuse its discretion in denying mother's continuance request in this case.

The juvenile court did not abuse its discretion in concluding that there was no "good cause"—and certainly no "exceptional circumstances"—to continue the dispositional hearing. By the time of the February 11 hearing, the juvenile court had already continued the dispositional hearing twice (on January 4 and on February 4) because one or both parents did not show up despite proper notice. Having both parents present was *critical* because the court was considering ordering a legal guardianship pursuant to section 360, subdivision (a). That provision empowers a court to order a legal guardianship at the dispositional hearing (and hence prior to a period of reunification), but conditions the exercise of that power upon obtaining the custodial parent(s)'s personal waiver of their rights to reunification services and personal consent to the legal guardianship. (§ 360, subd. (a); *In re Summer H.* (2006) 139 Cal.App.4th 1315, 1321 ["Section 360 . . . is a parent-driven statute" contingent upon "the parent's consent"]; cf. *In re L.A.* (2009) 180 Cal.App.4th 413, 418-419, 427 [requiring waiver and consent of "the custodial parent"].) Because both mother and father had custody of Kai at the time this case was initiated, the juvenile court's authority to grant a legal guardianship over Kai hinged on having both parents present to obtain their waivers and consent. Mother's absence from the February 11 hearing was insufficient, on its own, to justify a continuance. (E.g., *Nahas v. Nahhas* (1955) 135 Cal.App.2d 440, 442 ["The mere absence of a party standing alone is insufficient to compel the court to grant a continuance"].)

7

What is more, the juvenile court had ample reason to believe that granting even a short continuance would have been fruitless:  By the time mother was a "no show" at the February 11 hearing, the juvenile court had already explained to her the importance of attending every hearing; mother had already not shown up at the February 4 hearing despite being explicitly told by the juvenile court to attend; and all of the court's efforts to secure mother's attendance at the February 11 hearing—by sending proper notice as well as asking mother's attorney and paternal grandfather to tell mother about the hearing—had already proven to be insufficient to secure mother's attendance.  Mother's sole response on appeal is to suggest that her absence was "understandable" because she thought her prior written waiver and consent obviated any need to attend, but this suggestion flies in the face of the juvenile court's repeated personal orders to mother to show up to court hearings.  It also distinguishes this case from *In re John M.* (2006) 141 Cal.App.4th 1564, which held that a juvenile court erred in denying a first-time request for a continuance to allow an investigation of a noncustodial parent's home for placement.  (*Id.* at pp. 1571-1572.)

The juvenile court also did not abuse its discretion in determining that a further continuance was contrary to Kai's interests.  To be sure, an order granting legal guardianship to paternal grandparents would have more promptly resolved Kai's custody status, provided him with a stable environment, and avoided any danger of temporary placement—which are the factors to be given "significant weight."  But, as described above, the juvenile court had no reason to believe that granting a third continuance would have resulted in mother showing up to the yet-again-postponed hearing.  All of the court's prior efforts had

failed. Thus, the court's choice was between (1) ordering reunification services for mother and father, and thereby moving the case forward toward the permanency planning stage where a legal guardianship could be ordered without the parents' consent (§ 366.26, subd. (b)(3)), or (2) postponing the dispositional hearing again, and possibly again and again, thereby delaying any forward movement of the case. As between these two options, the former option was the one that would more promptly resolve Kai's custody stages, provide him with a stable environment and avoid any danger of temporary placement; this is especially so where, as here, Kai is to remain with the paternal grandparents while the parents are receiving reunification services.

\* \* \*

In light of our rationale, we have no occasion to reach the Department's argument that mother had forfeited her right to object to the denial of her continuance request or mother's argument that the erroneous denial was prejudicial because the entry of a dispositional order forecloses the statutory availability of section 360, subdivision (a).

**DISPOSITION**

The order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
HOFFSTADT

We concur:

_____, P. J.
LUI

_____, J.
CHAVEZ