Filed 3/14/24  In re Journee E. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re JOURNEE E., a Person Coming Under the Juvenile Court Law. | B328354 (Los Angeles County Super. Ct. No. 22CCJP02252B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. ANDRIA E., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Pete R. Navarro, Juvenile Court Referee.  Affirmed.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, and Kim Nemoy, Assistant County Counsel, for Plaintiff and Respondent.

_____

Andria E. (Mother) appeals from the juvenile court's orders at the six-month review hearing held pursuant to Welfare and Institutions Code section 366.21, subdivision (e).[1]  At the hearing, the court found substantial risk of detriment to four-year-old Journee E. if she were returned to Mother's physical custody, and the court continued Mother's family reunification services for another six months.  The court also ordered an evaluation of a maternal great-aunt who lived in Texas for possible adoption of Journee.  On appeal, Mother contends the juvenile court abused its discretion in failing at the six-month review hearing to appoint the maternal great-grandmother, with whom Journee was placed, as Journee's legal guardian and to terminate jurisdiction.  Because Mother did not request a legal guardianship for Journee, she forfeited the issue.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Investigation and Dependency Petition*
On June 6, 2022 the Department received a referral after Mother went to urgent care and disclosed she had active thoughts about stabbing herself, hitting pedestrians and other vehicles with her car, and drowning Journee and Journee's half sister,

_____

[1]    Further undesignated statutory references are to the Welfare and Institutions Code.

then six-year-old Nyla E.[2]  Mother was placed on a psychiatric hold and admitted to a mental health facility, then became verbally and physically aggressive toward staff.  Mother left the facility after repeatedly kicking and ramming the locked double doors, which eventually opened.

On June 10, 2022 the Department filed a petition under section 300, former subdivision (b)(1), alleging Mother "ha[d] a history of mental and emotional problems including suicidal and homicidal ideation, auditory hallucinations, delusional thinking, and aggressive behaviors" that rendered her incapable of providing regular care of Journee and Nyla.  The children were removed from Mother and placed with their maternal great-grandmother, Jennice W.

B.    *The Jurisdiction and Disposition Hearings*

At the August 3, 2022 jurisdiction hearing, the juvenile court sustained the amended allegations under section 300, former subdivision (b)(1), that Mother's mental and emotional problems rendered her incapable of providing regular care for Journee.  At the Department's request, the court continued the disposition hearing to September 20 for compliance with the Indian and Child Welfare Act (25 U.S.C. § 1901 et seq.; IWCA) and related California law.

---

[2]    Mother's appeal only involves Journee.  The juvenile court found that Jeremy R. was Journee's alleged father and the Department had made due diligent efforts to contact him, but his whereabouts were unknown.  Jeremy is not a party to this appeal.

At the September 20, 2022 disposition hearing, the juvenile court declared Journee a dependent of the court and removed her from Mother's physical custody. The court ordered Mother to submit to weekly random and on-demand drug and alcohol testing, a psychological assessment, and a psychiatric evaluation. The court also ordered Mother to participate in mental health counseling and individual counseling and to take all prescribed psychotropic medication. The court granted Mother monitored visits with Journee for a minimum of two times per week for two hours each visit.

On September 28, 2022 Mother timely appealed from the disposition order. Mother contended the Department and the juvenile court failed to comply with the inquiry and notice requirements of ICWA and related California law because the Department failed to interview the maternal grandmother and two maternal great-aunts. We dismissed the appeal as moot because the Department interviewed the maternal relatives while the appeal was pending. (*In re Journee E.* (Sept. 25, 2023, B323959) [nonpub. opn.].)

C.    *The Six-month Status Review Report*

According to the March 10, 2023 six-month status review report, Journee was doing well and thriving in Jennice's home. Journee appeared advanced for her age and had many friends in preschool. She had weekly video visits with her half sister Nyla, who resided in Texas. Jennice reported that Journee missed Nyla very much.

Mother visited Journee daily at Jennice's home for two hours in the morning and four hours in the afternoon. The visits were monitored by Jennice. Mother helped get Journee dressed

and bathed her.  Mother also helped Journee with her homework. Journee stated she loved Mother and liked seeing her.  The social worker observed that Mother "love[d] Journee very much" and "appear[ed] to have a close relationship with Journee."  At a November 30, 2022 child family team meeting, Mother stated her goal was to close the dependency case and have her children live with her.

According to the status review report, Mother was not in compliance with her case plan.  Mother denied having a history of mental health issues, and she stated the results of her psychological evaluation were "not true."  The psychologist reported that Mother struggled with "'mental [b]reakdowns,'" lacked insight, and was defensive.  But the psychologist opined that Mother likely could manage her mental health problems with proper treatment.  However, Mother refused to participate in individual counseling or take any prescribed psychotropic medication.  Further, Mother did not provide proof she complied with the court order to participate in a psychiatric evaluation. Mother missed all weekly drug tests from September 23, 2022 to February 2, 2023.  Mother denied any drug use, and she refused to submit to drug testing by the Department.  The social worker, Jennice, and extended family members tried to help Mother to obtain services, but Mother was defensive and refused assistance.

In December 2022 Jennice expressed an interest in becoming Journee's legal guardian.  But Jennice later informed the social worker that her sister, maternal great-aunt Brenda T., wanted to adopt Journee.  On March 7, 2023 the social worker spoke with Brenda, who confirmed her interest in adopting Journee.  Brenda lived in Texas near Nyla.  Brenda indicated Journee would visit Nyla often if Brenda adopted Journee.

Brenda added that Jennice frequently visited her in Texas because they were "a very close family." The social worker requested that the juvenile court issue an Interstate Compact on the Placement of Children (ICPC) order to assess Brenda for possible adoptive placement in the event reunification with Mother failed.[3]

D.    *The Six-month Review Hearing*

At the March 20, 2023 six-month review hearing (§ 366.21, subd. (e)), Mother's attorney reported that Mother did not think she had any current problems that needed to be addressed. Mother's attorney stated, "[B]ased on my conversation with her, she is obviously asking that the order be a home of mother order today, that both kids go home to her, and that the case close." Minor's counsel argued Mother's denial "raise[d] serious concern" given Mother's prior involuntary hospitalization for suicidal ideation, her prior aggressive behavior, and her failure to address her mental health issues. Minor's counsel agreed with the Department's request that the court continue Mother's family reunification services and issue an ICPC order to assess Brenda for possible adoption of Journee. Mother requested the court terminate jurisdiction because there was no evidence of child abuse, and "prolonging this [case] on the basis of mental health

---

[3]    "The ICPC is a compact among California and other states, the purpose of which is "'to facilitate the cooperation between states in the placement and monitoring of dependent children.'"" (*In re Suhey G.* (2013) 221 Cal.App.4th 732, 742; accord, *In re Z.K.* (2011) 201 Cal.App.4th 51, 66.)

when that has nothing at all to do with abuse" was not within the court's jurisdiction.

After hearing from Mother and the attorneys, the court found by clear and convincing evidence that returning Journee to Mother's physical custody would create a substantial risk of detriment to the child. The court stated, "Mother has been wholly non-compliant in the case plan. She denies that there is even a basis for jurisdiction." But the court continued Mother's family reunifications services, finding "that should Mother receive the mental health treatment she needs, [Journee] may be returned to her by the permanency hearing." The court issued an ICPC order to assess Brenda and set a 12-month review hearing (§ 366.21, subd. (f)) for September 18, 2023.

Mother timely appealed.

## DISCUSSION

A.    *The ICPC Order Was Appropriate*

Mother argues legal guardianship was in Journee's best interest instead of an ICPC order with a plan of adoption by Brenda, who lives in Texas. But at the six-month review hearing, the juvenile court ordered only an ICPC evaluation of Brenda, not placement or adoption. (See *In re A.J.* (2013) 214 Cal.App.4th 525, 541 ["The ICPC governs the interstate placement of children, and generally requires that no child may be sent to another state for placement *'in foster care or as a preliminary to a possible adoption'* unless the sending agency has first complied with the law's requirements."]; *In re Z.K.* (2011) 201 Cal.App.4th 51, 66 ["'The ICPC governs conditions for out-of-state "placement in foster care or as a preliminary to a possible adoption."'"].) The

7

court could not order adoption or placement of Journee with Brenda in Texas until the ICPC evaluation was completed. (*In re Emmanuel R.* (2001) 94 Cal.App.4th 452, 462 ["ICPC procedures must be completed *before* a member state can order a child sent into another state for placement. . . . If a state sends a child into a home for placement prior to completion of ICPC procedures, the 'sending' is equivalent to a conditional or contingent placement barred by the ICPC."]; *In re Luke L.* (1996) 44 Cal.App.4th 670, 682 ["The ICPC prohibits sending a minor into the receiving state 'until the appropriate public authorities in the receiving state shall notify the sending agency, in writing, to the effect that the proposed placement does not appear to be contrary to the interests of the child.'"].)

B.      *Legal Guardianship Under Section 360, Subdivision (a)(1)*

At the disposition hearing, "[a]fter receiving and considering evidence on the appropriate disposition, the juvenile court may (1) order a legal guardian be appointed for the child (§ 360, subd. (a)); (2) order informal services without adjudicating the child a dependent (*id.*, subd. (b)); or (3) adjudge the child a dependent of the juvenile court (*id.*, subd. (d))." (*In re L.A.* (2009) 180 Cal.App.4th 413, 425; accord, *In re G.W.* (2009) 173 Cal.App.4th 1428, 1436.) "'Before the juvenile court may appoint a legal guardian pursuant to subdivision (a) of section 360, each of the following must occur:  (1) the court must find that the child is a person described by section 300; (2) the parent must advise the court that he or she is not interested in family maintenance or family reunification services; (3) the court must determine that a legal guardianship is in the best interests of the child; (4) the parent and the child must agree to the

8

appointment; (5) the court must advise the parent and child that reunification services will not be provided; and (6) the court must order an assessment of the person whom the court anticipates appointing as the legal guardian.'"[4] (*In re L.A.*, at p. 425; accord, *In re G.W.*, at p. 1437; see *In re Summer H.* (2006) 139 Cal.App.4th 1315, 1331 ["[S]ection 360 is triggered by the custodial parent's express approval of both a guardianship for the child and the prospective guardian and the juvenile court's finding, based on all the evidence, including a statutorily prescribed review of the proposed guardian's criminal history (§ 360, subd. (a)(4)), that the proposed guardianship is in the child's best interests."].)

The juvenile court has "the discretion to order legal guardianship under section 360, subdivision (a)." (*In re L.A., supra*, 180 Cal.App.4th at p. 419; see *In re Summer H., supra*,

_____

[4]    Section 360, subdivision (a)(1), provides in part, "Notwithstanding any other law, if the court finds that the child is a person described by Section 300 and the parent has advised the court that the parent is not interested in family maintenance or family reunification services and has executed a written waiver of any of those services, the court may, in addition to or in lieu of adjudicating the child a dependent child of the court, order a legal guardianship, appoint a legal guardian, and issue letters of guardianship, if the court determines that a guardianship is in the best interest of the child, provided the parent and the child agree to the guardianship, unless the child's age or physical, emotional, or mental condition prevents the child's meaningful response.  The court shall advise the parent and the child that reunification services will not be provided as a result of the establishment of a guardianship.  The proceeding for the appointment of a guardian shall be in the juvenile court."

139 Cal.App.4th at p. 1321.) Custody determinations are "committed to the sound discretion of the juvenile court," and such rulings "should not be disturbed on appeal unless an abuse of discretion is clearly established." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318; see *In re J.M.* (2020) 44 Cal.App.5th 707, 717-718 [juvenile court did not abuse its discretion in appointing maternal grandmother as legal guardian under section 366.26, subdivision (c)(4)(A)].)

C.  *The Six-month Review Hearing Under Section 366.21, Subdivision (e)*

"'Family preservation, with the attendant reunification plan and reunification services, is the first priority when child dependency proceedings are commenced. [Citation.] Reunification services implement "the law's strong preference for maintaining the family relationships if at all possible." [Citation.]' [Citation.] Reunification services are typically understood as a benefit provided to parents, because services enable them to demonstrate parental fitness and so regain custody of their dependent children." (*In re Nolan W.* (2009) 45 Cal.4th 1217, 1228; accord, *Michael G. v. Superior Court* (2023) 14 Cal.5th 609, 624 ["When a child has been removed from a parent's custody, the court ordinarily must order child welfare services designed to facilitate the reunification of the family."].)

"[A]t the six-month review hearing, the juvenile court must decide whether return of a dependent child to the parent would be detrimental to the child. Section 366.21, subdivision (e) requires the court, in making this decision, to 'consider the efforts or progress, or both, demonstrated by the parent . . . and the extent to which he or she availed himself or herself [of] services

10

provided,' and it specifies that 'failure of the parent or legal guardian to participate regularly and make substantive progress in court-ordered treatment programs shall be prima facie evidence that return would be detrimental.'" (*In re Nolan W., supra*, 45 Cal.4th at p. 1235; accord, *Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 305 ["There is a statutory presumption the child will be returned to parental custody unless the court finds the child's return would create 'a substantial risk of detriment to the physical or emotional well-being' of the child."].)

D.  *Mother's Failure To Request Legal Guardianship Forfeited the Issue*

Mother contends the juvenile court abused its discretion in failing to appoint Jennice as the legal guardian for Journee at the six-month review hearing.  But Mother did not file a section 388 petition to request a change in the disposition order and appointment of a legal guardianship.  (*In re Christopher L.* (2022) 12 Cal.5th 1063, 1079-1080 ["Section 388 authorizes a parent 'or other person having an interest in a child who is a dependent child of the juvenile court' to petition the juvenile court 'to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court.'"]; *In re Marilyn H.* (1993) 5 Cal.4th 295, 308-309 ["[T]hroughout the reunification period and thereafter, the parent has the continuing right to petition the court for a modification of any of its orders based upon changed circumstances or new evidence pursuant to section 388."].)  Nor did Mother request legal guardianship at the disposition hearing or six-month review hearing.  Further, Mother did not inform the court that she was "not interested in

11

family maintenance or family reunification services," and she did not execute "a written waiver of any of those services" as mandated by section 360, subdivision (a)(1), before the court can appoint a legal guardian.  Instead, at the six-month review hearing, Mother sought termination of jurisdiction or return of Journee to Mother's physical custody.

Because Mother did not request the court appoint Jennice as Journee's legal guardian, she forfeited her contention that the juvenile court abused its discretion in not appointing Jennice as Journee's legal guardian at the six-month review hearing.  "[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court."  (*In re S.B.* (2004) 32 Cal.4th 1287, 1293; accord*, In re R.Q.* (2023) 96 Cal.App.5th 462, 470 [presumed father forfeited issue where he "argued broadly that he wanted to reunify with both minors and have them placed with him," but "he did not argue that placement of minor with C.H. would interfere with his visitation or minor's relationship with her sister"]; *In re Maria Q.* (2018) 28 Cal.App.5th 577, 590 ["'A party forfeits the right to claim error as grounds for reversal on appeal when he or she fails to raise the objection in the trial court.'"].)[5]  Moreover, we cannot

_____

[5]     Mother also contends the Department and the juvenile court failed to comply with ICWA and related California law. She challenges the Department's failure to interview the maternal grandmother and maternal great-aunts and the adequacy of the IWCA notice, raising the same arguments she asserted in her first appeal, *In re Journee E., supra*, B323959.  As discussed, we found the ICWA notice was adequate, and we dismissed Mother's appeal of the ICWA inquiry as moot because

evaluate whether the court abused its discretion in not appointing Jennice as the legal guardian because the court was never presented with a request, and further, there was no evaluation of Jennice as a possible legal guardian.  And, as discussed, the other requirements for appointment of a legal guardian were not met.

## DISPOSITION

The orders are affirmed.


FEUER, J.

We concur:


SEGAL, Acting P. J.


MARTINEZ, J.

---

the Department interviewed the two maternal great-aunts while Mother's appeal was pending.  (*Ibid.*)